2008 VT 117

# In re Appeal of Jenness and Berrie

[968 A.2d 316]

No. 07-318

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Grearson, D.J., Specially Assigned

Opinion Filed September 5, 2008

*Thomas W. Costello* of *Costello Wright* and *Timothy J. O'Connor, Jr.* of *O'Connor Law Offices*, Brattleboro, for Appellants.

*Robert M. Fisher* of *Fisher & Fisher Law Offices*, Brattleboro, for Appellee Town of Dummerston.

*Walter G. French*, West Dummerston, for Appellees/Cross-Appellants Enello.

¶ 1. **Reiber, C.J.** This appeal from the Environmental Court raises three issues. The first, raised by permit applicants Jenness and Berrie, is whether the court erred in concluding that a lot they owned was not entitled to an existing-small-lot exemption under 24 V.S.A. § 4406(1).[1] The second issue, raised on cross-appeal by neighboring landowners, is whether the Environmental Court erred in holding that an existing small lot need not comply with the generally applicable dimensional requirements of the local zoning ordinance. Third, neighbors contend that the court erred in concluding that this property has three "front" setbacks and one "side" setback, but no "rear" setback. Because the court's conclusion that the lot had merged with a lot on the other side of a public road was erroneous as a matter of law, we reverse and remand. We find no error on either of the cross-appeal issues.

¶ 2. The property at issue is a 1.1-acre field in the Town of Dummerston. The field was in common ownership between 1961 and 2001 with a 0.9-acre parcel — site of an existing house and garage — on the other side of a town road. In 2001, the common owner conveyed the field to applicants and the 0.9 acres to a third party. The field is roughly the shape of a pear sliced in half lengthwise, and measures roughly 500 feet along its long axis, from east to west. At its midpoint, the field measures approximately 110 feet from north to south, and the north-south dimension diminishes gradually on the east and west ends of the property. The field is bordered to the east, north, and west by a curving road, and to the south by the property of neighbors who are parties to this appeal.

¶ 3. The Town passed its first zoning ordinance in 1971. Under that ordinance, the field is subject to Rural Residential zoning requirements, including a two-acre minimum lot size. As mandated by 24 V.S.A. § 4406, the ordinance contains an exception to the minimum lot size for small lots already in existence at the time of the passage of the ordinance. As noted, this field was in common ownership with the 0.9-acre parcel across the street in 1971, although both properties were held by separate deeds.

¶ 4. Applicants bought the field in 2001, and first applied for a permit to place a manufactured home on the site in February

---

[1] All statutory references in this opinion are to the statutes that applied at the time of the permit applications at issue in this case. See 24 V.S.A. § 4480 (saving clause); see also 2003, No. 115 (Adj. Sess.), § 95 (repealing § 4406 and enacting in its place § 4412).

2003. That application, #2796, requested a variance to the ordinance's presumptive seventy-five-foot rear-yard setback, and designated the southern portion of the field as the "rear" yard. In this application, the front of the house faced almost due north. The zoning administrator denied the variance request on February 11, 2003. Applicants appealed to the zoning board of adjustment (ZBA), which also denied the request. Applicants' subsequent appeal to the Environmental Court was dismissed with prejudice on January 13, 2004, leaving the denial of the variance request in place, and allowing applicants to submit a new and different application to the zoning administrator at a later date.

¶ 5. In late June of 2003, while application #2796 was still pending, applicants had submitted application #2831 to the zoning administrator. This time, applicants had rotated the proposed house ninety degrees, so the front of the house faced east. On this application, applicants designated the western border of the field as the "rear." The zoning administrator denied this application on July 16, 2003, finding that the application "[did] not meet Lot Depth Minimum." No appeal was taken from this denial.

¶ 6. Applicants submitted their third application, #2872, on March 23, 2004, after both previous applications had been finally resolved against them. The house was now rotated back to the original north-south orientation. In application #2872, the front and back of the house were not labeled, but the plan now designated the eastern portion of the field as the "rear setback" and the west as the "front." The zoning administrator granted this application without written explanation. Neighbors appealed, and the ZBA revoked the permit, reasoning that the field was not an existing small lot, that it did not meet the minimum *width* requirements, and that applicants could not rotate the house to satisfy the width requirement because they had failed to appeal the denial of application #2831.

¶ 7. Applicants appealed to the Environmental Court on July 29, 2004, and both parties eventually moved for summary judgment.[2] In its decision on those motions, issued in September 2005, the Environmental Court reached several conclusions. First, it noted

---

[2] While those motions were pending, in December 2004, the person from whom applicants purchased the field quitclaimed to them additional lands "inadvertently omitted" from the 2001 conveyance. Those lands, according to the Environmental Court, increased the field's north-south dimension, thereby increasing the buildable envelope.

that the location of the front, rear, and side setbacks would be determined based on the location and shape of the field, without reference to the orientation of the building. That is, merely rotating the proposed building would not change the setbacks. Because of the unusual shape of the lot, the court determined that it has three front yards — facing three segments along the curve of Stickney Brook Road — no rear yard, and one side yard bordering neighbors' land to the south. The court also concluded that the existing-small-lot exemption "reliev[es] an applicant from the lot size, width and depth requirements but [from] no other dimensional requirements," i.e., not from setback requirements. Finally, the court held that, because the size of the lot and the proposed placement of the building had changed since the last ZBA decision, the revised application would still need approval from the zoning administrator and the ZBA.

¶ 8. In its order disposing of the summary-judgment motions, the Environmental Court also held that issues of fact remained in dispute as to whether, at the time the Dummerston zoning ordinance was adopted, the field had "merged" with the 0.9-acre parcel, and whether the field was entitled to the existing-small-lot exemption.[3] An evidentiary hearing was held on that question, and the Environmental Court issued a decision in July 2007. The dispositive issue in deciding the question, according to the court, was "whether, in 1971 . . . , Stickney Brook Road's use was such that it functionally separated [the field] from the 0.9-acre parcel across the road." After hearing testimony concerning the character and usage of the road in 1971, the court concluded that the road was so little used at that time that it did not prevent the two parcels from being used "in the ordinary manner" as one parcel. Thus, the court concluded that the parcels had merged and that the field was not entitled to the existing-small-lot exemption. These appeals followed.

## I. Merger

¶ 9. We first consider applicants' contention that the Environmental Court erred in concluding that the public road did not

---

[3] The parties had already stipulated that the two properties "are not contiguous to one another and what is presently known as Stickney Brook Road runs between them." (Emphasis added.) The parties' stipulation noted that, if not for the road, the parcels would be contiguous, and that the road is a town road open for public use.

prevent the merger of the two parcels. Specifically, applicants contend that they were entitled to judgment as a matter of law that the two parcels, because they were separated in 1971 by a town highway, could not merge. Applicants urge us to rule that this issue is conclusively resolved in their favor by our recent decision in *In re Bailey*, 2005 VT 38A, 178 Vt. 614, 883 A.2d 765 (mem.). We first outline briefly the state statutes and local regulations at issue in this appeal.

¶ 10. As noted, the Town enacted zoning bylaws for the first time in 1971. Under those bylaws, the parcels at issue here are located in the Rural Residential zoning district. As required by statute, the bylaws exempt certain preexisting small lots from that district's presumptive two-acre lot-size minimum. See 24 V.S.A. § 4406; Town of Dummerston Zoning Bylaws § 601. Applicants' field is approximately 1.1 acres in size, and thus cannot be developed without a variance unless it was an "existing small lot" at the time the bylaws became effective. Under the statute and the bylaws, an existing small lot is "[a]ny lot in individual and separate and non-affiliated ownership from surrounding properties in existence on the effective date of any zoning regulation." *Id.* Such a lot "may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less than one-eighth acre in area with a minimum width or depth dimension of forty feet." *Id.* Thus, if the field was in individual and separate and nonaffiliated ownership from "surrounding properties" in 1971, it is eligible for the existing-small-lot exemption. The question before us is whether the 0.9-acre parcel, separated from the field by Stickney Brook Road, was a "surrounding" property such that the two properties merged in 1971 by virtue of their common ownership, and despite the fact that a public road separates them and renders them noncontiguous. This appeal thus turns principally on the definition of "surrounding," to which we now turn.

¶ 11. In construing a zoning ordinance, we employ ordinary rules of statutory construction. *In re Vt. Nat'l Bank*, 157 Vt. 306, 312, 597 A.2d 317, 320 (1991). We consider the entire ordinance and strive to give effect to every part. *Id.* We will reverse the Environmental Court's construction of a zoning ordinance only if it is "clearly erroneous, arbitrary or capricious." *In re Weeks*, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998).

¶ 12. The Town places great weight on the distinction between the terms "surrounding" and "contiguous." The Town notes that § 4406(1) refers to "surrounding" properties, while the subsequent amendments to several related subsections use the term "contiguous." Neighbors similarly contend that "contiguity of the parcels is not contemplated by statute to be a factor." Neighbors offer the following analysis:

> "Surrounding" means encircling but does not connote touching, as in the phrase, *the surrounding countryside.* Contiguous, abutting and adjoining, however, all connote and are defined to include touching. *Contiguous* may be said to be contained within a subset of *surrounding.* All that is contiguous is surrounding but not all that is surrounding is necessarily contiguous.

Neighbors thus contend that the 0.9-acre parcel, which abuts the same road as the field, in fact "surrounds" the field. On this reading, "surround" appears to mean little more than "is close to," and would seem to allow merger of lots even farther apart than these two. The Environmental Court's fact-based rationale — that the road was so little-used as not to prevent merger — implicitly endorses this construction of the term "surround" and is therefore similarly open-ended. As noted, the parties stipulated that the parcels are not contiguous because of the road between them.

¶ 13. Although we did not have to resolve the question in *Wilcox,* our opinion in that case suggests that we viewed the terms "surrounding" and "contiguous" as equivalent in this statute. See *Wilcox v. Vill. of Manchester Zoning Bd. of Adjustment,* 159 Vt. 193, 196, 616 A.2d 1137, 1139 (1992) ("The Legislature intended [via § 4406] to negate claims of nonconforming uses for *contiguous* lots in affiliated ownership that are functionally one property." (emphasis added)). Our decision in *In re Weeks* is to similar effect. In that case we construed a bylaw provision that, like the one here, referred to "surrounding" parcels rather than contiguous, adjoining, or adjacent ones. The surrounding/contiguous distinction was not squarely raised in *Weeks,* as we affirmed on another ground the Environmental Court's determination that no merger had occurred. 167 Vt. at 557, 712 A.2d at 910-11. We plainly assumed throughout the opinion, however, that "surrounding" parcels were also necessarily contiguous. In *Weeks,* we cited two treatises referring to "adjacent" lots, *id.* at 556, 712

A.2d at 910, two out-of-state cases concerning "contiguous" and "adjoining" lots, *id.* at 556-57, 712 A.2d at 910, and referred to § 4406 as applying generally to "contiguous" or "adjoining" parcels. *Id.* at 555, 557, 712 A.2d at 910.

¶ 14. In a more recent case, *In re Richards*, 2005 VT 23, 178 Vt. 478, 872 A.2d 315 (mem.), we similarly assumed that "surrounding" simply means "adjoining." There, we noted that "[a]djoining property held in common ownership on the effective date of zoning is deemed merged by operation of law," and that "§ 4406(1) establishes a bright line rule for the merger of adjoining lots held in common ownership." *Id.* ¶¶ 6, 7.

¶ 15. The parties have cited no other cases directly on point, and our research reveals none. It appears that Vermont's statutory use of the term "surrounding" is unique. A review of the zoning treatises lends support to our conclusion that § 4406 and the local bylaws that implement it were meant to apply to contiguous lots, and that the word "surrounding" was meant to include contiguous parcels only. One treatise states that local zoning regulations

> often limit exemptions or grandfather clauses to lots of record that are in single or separate ownership. Either implicitly by such provisions or expressly by "merger" requirements in the ordinance itself, *contiguous* substandard lots under *common ownership* may lose their separate identity and be treated as a single parcel for purposes of zoning area and frontage requirements and subdivision restrictions.

3 A. Rathkopf & D. Rathkopf, The Law of Zoning & Planning § 49:13, at 49-20 to 49-21 (footnotes omitted); see also *id.* § 49:16, at 49-31 ("Merger generally requires the combination of two or more *contiguous* lots of substandard size that are held in common ownership in order to meet the minimum-square-footage requirements of a particular zoned district." (emphasis added and footnote omitted)). This oft-cited and comprehensive treatise contains no reference to any case, statute, or ordinance drawing the distinction neighbors urge between "surrounding" and "contiguous" lands. Likewise, another leading treatise states, as an apparently uncontroversial proposition needing minimal citation, that "an owner is entitled to an exception only if his lot is isolated. If the owner of such lot owns another lot *adjacent* to it,

he is not entitled to an exception." 2 K. Young, American Law of Zoning § 9.67, at 325 (4th ed. 1996) (emphasis added); see also 7 P. Rohan & E. Kelly, Zoning and Land Use Controls § 42.03[2][a], at 42-47 to 42-48 (2007).

■ ¶ 16. Neighbors' proposed construction of the term "surrounding" would introduce profound uncertainty into our state's zoning provisions. If, in § 4406 and the local provisions implementing it, a parcel could be deemed "surrounding" without being contiguous, Vermont landowners would be hard-pressed to ascertain whether their lots were buildable. Restrictions on the free use of real property are to be narrowly construed. *Weeks*, 167 Vt. at 555, 712 A.2d at 910 ("[Z]oning ordinances are in derogation of common law property rights and . . . in construing land use regulations any uncertainty must be decided in favor of the property owner." (quotation omitted)). We are reluctant to adopt a construction that would render this lot, and perhaps many others, useless.

■ ¶ 17. The term "surrounding lands" in § 4406 appears to have been something of a scrivener's error. The term is not used in any other zoning statute or ordinance and, if given the meaning urged by neighbors and the Town, would have restrictive and unpredictable results that the Legislature is unlikely to have intended. Thus, we hold today that the term "surrounding," as it is used in § 4406 and the zoning bylaws here at issue, refers only to properties that are contiguous.

■ ¶ 18. We therefore turn to the question of whether the properties here in question are contiguous, despite being separated by a public road that was in use when the zoning ordinance was enacted. The question is easily resolved. The parties stipulated at trial that the two properties "*are not contiguous* to one another and what is presently known as Stickney Brook Road runs between them." (Emphasis added.) The parties' stipulation noted that, *if not for the road, the parcels would be contiguous.* Neighbors and the Town contend that the properties, although not contiguous, can be "surrounding." Because we decide today that only contiguous parcels are "surrounding," the parties' stipulation disposes of the issue. These parcels, because they are concededly not contiguous, are not "surrounding" and, therefore, cannot merge under the statute and ordinances before us. Thus, the

Environmental Court erred in concluding that the field was not an existing small lot.

## II. The cross-appeal

¶ 19. On cross-appeal, neighbors argue that the court erred in considering the question at all because applicants failed to appeal from the denial — based on the failure to meet width and depth requirements — of their second permit application. Neighbors also contend that the Environmental Court erred in concluding that the field, if it were entitled to existing-small-lot status, would be exempt from the two-hundred-foot width and depth requirements in the bylaws, and could therefore be developed without being granted a variance as to those requirements.

### A.

¶ 20. Neighbors argue that applicants' failure to appeal from the denial of permit application #2831 — the permit was denied for insufficient lot depth — was effectively a concession, having res judicata effect, that the otherwise-applicable 200-foot lot width and depth minimums applied to applicants' parcel even if it were determined to be an existing small lot. We disagree.

¶ 21. On December 7, 2004, after the second permit application was denied, additional land adjoining the field was conveyed to applicants. The precise size of the additional land is not revealed in the record, but the Environmental Court's undisputed finding was that, because of the December 2004 conveyance, "the available building envelope on the [field] is larger than it was at the time of the ZBA decision." Thus, at the time of the Environmental Court's decisions concerning application #2872, that application did not concern exactly the same subject matter as application #2831, because the parcel was larger and the proposed building had been moved in the interim. We conclude that the Environmental Court had jurisdiction to rule on applicants' appeal from the ZBA's denial of permit application #2872.

### B.

¶ 22. We turn to the merits of neighbors' assertion that the Environmental Court erred in concluding that existing small lots are exempt from the otherwise-applicable dimensional requirements in the Dummerston bylaws. Our review is deferential, and

we will reverse the court's construction of the ordinance only if it is clearly erroneous. *Weeks*, 167 Vt. at 554, 712 A.2d at 909.

¶ 23. The Environmental Court, in addition to its brief summary-judgment ruling on this point, issued a decision and order on neighbors' motion for reconsideration, in which it elaborated its rationale for holding that the small-lot exemption operates to exempt existing small lots from "lot size, lot depth, and lot width" requirements, but not from setback and other dimensional requirements. The court ruled that neighbors' proposed interpretation — that an existing-small-lot exemption would operate only to exempt properties from the minimum-area requirement, not from the width and depth requirements — would render meaningless the forty-foot width and depth provisions in the small-lot exemption. There was no error in this ruling. As the Environmental Court concluded, it is precisely the intent of the existing-small-lot exemption to permit development — without variances as to area or dimensions — of preexisting *small* lots. Cf. *Town of Castleton v. Fucci*, 139 Vt. 598, 602, 431 A.2d 486, 488 (1981) (noting that one-eighth acre lot, approximately seventy feet by seventy feet, might be developed if a *setback* variance were obtained).

¶ 24. The existing-small-lot statute and bylaws, which expressly set minimum dimensions for existing small lots, were plainly intended to preempt otherwise-applicable dimensional requirements. If that were not true, an existing small lot greater than one-eighth of an acre in area and more than forty feet wide and deep — and which therefore met all dimensional requirements of the existing-small-lot statute — would nonetheless require a variance unless it met the 200-foot width and depth requirements applicable to other lots. Neighbors' reading would render the forty-foot width and depth provisions in the existing-small-lot statute superfluous. When possible we construe statutes to avoid rendering one part mere surplusage, *Robes v. Town of Hartford*, 161 Vt. 187, 193, 636 A.2d 342, 347 (1993), and we strive to read all parts of the statutory scheme in harmony. *Id.* at 192, 636 A.2d at 346. The Environmental Court's ruling accomplished both goals, and we find no error.

## III. Setbacks

¶ 25. Finally, neighbors take issue with the Environmental Court's treatment of the lot's setbacks. The court concluded that

the boundaries fronting on roads would be subject to the fifty-foot front setback, and that the border with neighbors' property would be subject to the forty-foot side setback rather than the seventy-five-foot rear setback. Neighbors and the Town contend that the court erred in so concluding. We disagree, and affirm the Environmental Court's determination regarding the setbacks.

¶ 26. Our standard of review on this question is somewhat deferential. We agree with the Supreme Judicial Court of Massachusetts, which long ago noted that the question of which side of a lot, if any, was the "rear" was "largely a question of fact although partaking in some aspects of questions of law." *Bianco v. City Eng'r & Bldg. Inspector of City of North Adams*, 187 N.E. 101, 103 (Mass. 1933). As to the findings of fact, we will reverse only for clear error. *Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica*, 2005 VT 16, ¶ 18, 178 Vt. 35, 869 A.2d 145. To the extent that the setback issue raises questions of law, our review is de novo. *Id.*

¶ 27. As a general matter, "odd-shaped lots raise a variety of legal puzzles involving frontage, yards, and setback lines." 2 K. Young, *supra*, § 9.59, at 303. This case is no exception. As noted, the field here at issue is the shape of a lengthwise-split pear. Its border with neighbors' property is nearly straight, but the remaining borders, roughly speaking, constitute a gradually curving line of frontage on Stickney Brook Road. The Environmental Court found that this frontage could be approximated as three straight lines, with vertices at Stickney Brook Road's intersections with other roads.

¶ 28. The Environmental Court's application of the setback ordinance to this parcel was not clearly erroneous. The ordinance contains no specific provision governing lots shaped like this one, nor does it specify how more traditionally shaped "corner" lots are to be treated.[4] Our research reveals scant

---

[4] More specific statements of how corner lots and other unusually shaped lots are to be treated are common in local zoning ordinances. See, e.g., *Druffel v. Bd. of Adjustment*, 2007 MT 220, ¶ 27, 168 P.3d 640 (citing local ordinance providing that certain corner lots may be determined to have only front and side yards, and no back yards); *In re Indep. Terrace Corp.*, 230 N.Y.S.2d 870, 871-72 (Sup. Ct. 1962) (citing provision defining "corner lot" as one that fronts on at least two "streets or public places"); *State ex rel. Bollenbeck v. Village of Shorewood Hills*, 297 N.W. 568, 570 (Wis. 1941) (citing zoning ordinance defining "corner," "through," "inte-

authority on how lots like this one are to be treated, likely owing to the already-noted local differences in the ordinances governing them. One treatise does note that "[a] less commonly used definition of a corner lot includes a lot that fronts on only one street but is located at a bend that is of a sufficiently sharp angle to constitute a corner." 7 P. Rohan & E. Kelly, *supra*, § 42.03[2][b], at 42-63 to 42-64. As noted, the ordinance here is silent, and the Environmental Court had to construe it without any such specific guidance.

¶ 29. The construction neighbors and the Town advance would result in a building envelope so small as to be useless, because the seventy-five-foot rear setback coupled with the fifty-foot front setback would consume the entire depth of the parcel for much of its width. Neighbors and the Town argue, however, that because the southern border of the property is "opposite" the front of the lot, it must therefore be deemed the "rear." The argument is unconvincing. The southern border, although it is roughly parallel to the middle of the curved border with Stickney Brook Road, is also adjacent and perpendicular to the same border at its ends. It was proper for the court to construe the ambiguous bylaw in favor of applicants' right to build a home on the property. See *Weeks*, 167 Vt. at 555-56, 712 A.2d at 910; see also *Bur v. Schwarten*, 264 N.W.2d 721, 724 (Wis. 1978) ("We cannot impose greater restrictions on the use of the land than the ordinance requires and where the ordinance is silent, the interpretation allowing for the greater use of the land must be followed . . . ."). The court's determination that the southern boundary should be subject to a side setback requirement, absent a specific statute or bylaw to the contrary, was not clearly erroneous.

*The Environmental Court's conclusion that the 1.1-acre and 0.9-acre parcels had merged is reversed; the court's conclusions regarding setbacks and minimum lot size are affirmed. The matter is remanded for further proceedings consistent with this opinion.*

---

rior," and "triangular" lots). Indeed, the ordinance cited in *Druffel* contains diagrams of several nonstandard lot shapes that designate how their boundaries will be treated. See Missoula City Zoning Ordinance § 19.04.220, http://www.ci.missoula.mt.us/cityclerk/city_code.htm (follow "Zoning Ordinance" hyperlink). Vermont cities and towns are free to adopt similarly specific ordinances, and some have done so. The courts may, however, properly construe silent or ambiguous ordinances in favor of allowing landowners to build.