STATE OF VERMONT
ENVIRONMENTAL COURT, SS.


In re: Appeal of CHARLOTTE POTOK
(Rinker's Telecom Facility (Plainfield))          Docket No. 131-6-06 Vtec


## DECISION AND FINAL ORDER

This is a municipal zoning appeal of a decision of the Town of Plainfield Zoning Board of Adjustment (ZBA) by Applicants Charlotte Potok, landowner, and Karl Rinker (for the benefit of, or as a representative of, "Rinker Communications").[1]  The ZBA essentially decided that the Potok property had to be subdivided before a zoning permit application – to allow a telecommunications tower (with associated outbuildings) to be erected on the property – could be considered on its merits.  Applicants appealed.  Applicants and Interested Persons Laura Zeisel and David Strong ("Neighbors") have filed cross-motions for summary judgment on the single issue raised in the Statement of Questions.  The Town has taken no position on the summary judgment motions.  For the following reasons, summary judgment is **granted** to Applicants, and the Neighbors' motion is **denied**.

Applicants filed an application seeking a conditional use permit allowing the construction of a communications tower at least 180 feet tall, and related structures, on Ms. Potok's property in the Rural Residential Zoning District.  *See* Plainfield Zoning Regulations § 4.3, at 17 (Rural Residential rules); *id.* § 6, at 28 (allowing telecommunications towers and facilities as conditional uses in all districts other than the Commercial district).  The property was described in the application as being 75 acres, and was at the time currently used primarily for residential purposes—i.e., Ms. Potok's own home.  Rinker's proposal is to construct the telecommunications facilities on another, somewhat removed part of the property, leaving the existing home, and primary residential use in place.  (The court does not here address, or resolve any merits issues regarding size, location or visibility of the tower.)

During a meeting at which the ZBA and the Planning Commission were jointly considering the application, Ms. Zeisel questioned whether the Potok lot

---

[1] Charlotte Potok died before the August 20, 2008 oral argument on the summary judgment motions.  Because her retained life estate has expired, the property is now titled to her children, Jed Clifford and Mia Clifford, who are in the process of being substituted as applicants below, and appellants in this case.  Mr. Clifford indicated at the 8/20 hearing that he intended to proceed with the permit application, and this appeal.

must first be subdivided before the application is further considered.[2]  The ZBA and the Planning Commission decided that the Zoning Administrator (ZA) should initially address the subdivision issue.  The matter was then presented to the ZA, who decided that no subdivision permit was needed.  Neighbors then appealed the ZA's decision to the ZBA.[3]

The ZBA found that the property already has "a building" (the house) and that the proposal would add other structures and out-buildings (the tower, etc.) that not are not "accessory" in nature to the house.  *See* ZBA Decision, ¶¶ 16–19 (June 2, 2006).  Based on those findings, the ZBA summarily concluded: "Thus, the Plainfield Zoning Ordinance and Subdivision Regulations require that the Potok lot be subdivided in order for the proposed development to occur."  *Id.* at ¶ 20.  Applicants appealed to this court.

<u>Discussion</u>

The Statement of Questions contains one question: "Whether a subdivision permit is required for proposed development."  This is the sole issue briefed in the summary judgment cross-motions.

Neither the ZBA nor Neighbors have cited any provision of the Plainfield Zoning Regulations or Subdivision Regulations that expressly requires a subdivision permit in these circumstances.  Rather, both the ZBA and Neighbors appear to have inferred that both the Zoning Regulations and the Subdivision Regulations allow no more than one principal structure or use per lot.  Because Applicants' lot already has one principal structure (a house), and the proposed communications facility is not accessory to a residence or home, then – so the argument goes – the current lot would have to be subdivided to arrive at one lot with the house, and another separate lot on which the proposed tower (i.e., its own principal structure, and use) would be located.  If such a lot were to be created, Applicants' application then could be considered on its merits under the Zoning Regulations.

---

[2] Ms. Zeisel provided most of this background explanation, without objection, during the August 20 oral argument.

[3] It is apparent to the court that the proceeding before the ZA on the subdivision issue, the ensuing appeal to the ZBA, and now this appeal all have been treated by the parties, and the ZBA, as within the larger scope of the Town's review of Applicants' conditional use application. However, it might well have been considered a separate controversy, and thus the decision as to any subdivision requirement appears to be interlocutory. The ZBA decided the subdivision question (by essentially rejecting the ZA's reasoning), but did not either grant, or deny the permit application itself.  However, the ZBA's subdivision decision appears to be appealable under 24 V.S.A. § 4471(a), which, by operation of 24 V.S.A. § 4472(a), allows appeal from "any decision" of the ZBA.  *See In re Miller*, 170 Vt. 64, 76 n.5 (1999) (addressing analogous issue). A decision in this appeal will not be merely advisory, and will therefore be binding on the parties and the Town with regard to the further consideration of Applicants' pending application.

This reasoning is predicated quite directly on the premise that only one principal use or structure or use is allowed per lot in the Rural Residential district. The court is familiar with such provisions, which are often found in Vermont zoning ordinances;[4] of course, a one-principal-use provision was a feature of the controversy in *In re Appeal of Curtis*, 2006 VT 9, 179 Vt. 620 (mem.), which the parties have briefed in detail. In Plainfield's Zoning Regulations and Subdivision Regulations, however, there is <u>no</u> such express provision.

Neighbors claim, and the ZBA appears to have assumed, that a one-principal-use or structure requirement is embedded, however implicitly, in some of the definitional sections of both the Zoning Regulations and the Subdivision Regulations. Neighbors have not cited, and the court has not found, any other arguably applicable provisions from either set of Plainfield regulations having a material impact on this issue.

In the Zoning Regulations, "lot" is defined as:

> Land occupied or to be occupied by a building and its accessory buildings, together with the required open spaces, and having not less than the minimum area, frontage, width and depth required for a lot in the district in which such land is situated.
>
> <u>Only one dwelling structure is allowed per lot</u>, except in a Planned Residential Development or Planned Unit Development.

Zoning Regulations § 1.7, at 3 (emphasis added). "Accessory use or structure" is defined as "A building or use clearly incidental or subordinate in size and overall appearance (except for barns) to the main use or building, and customarily in connection with, the principal building or use on the same lot." *Id.* § 1.7, at 2.

In the Subdivision Regulations, "lot" is defined as:

> Any parcel of land in single ownership and not divided by any town highway, occupied or to be occupied by no more than one principal building and its accessory buildings and meeting the minimum zoning requirements for a lot in the zoning district in which such land is located, except for *Planned Residential Developments.*

---

[4] *See, e.g.,* Town of Jericho Zoning Regs. (last revised 12/29/03), § 301.1 (all uses not specifically permitted or allowed, are prohibited); § 301.2 ("no more than one principal use shall be permitted per lot"). The undersigned was chair of the Jericho ZBA, later a combined Development Review Board, for many years, until December 2000.

3

Subdivision Regulations § 610, at 18 (emphasis in original).

"Zoning ordinances are construed according to the general principles of statutory construction." *In re Weeks,* 167 Vt. 551, 554 (1998); *see also In Re Appeal of Jenness & Burrie,* 2008 VT 117, ¶ 11 (9/5/08). "We are mindful, however, that zoning ordinances are in derogation of common law property rights and that 'in construing land use regulations any uncertainty must be decided in favor of the property owner.'" *Weeks,* 167 Vt. at 555 (rejecting a claimed zoning restriction that was not expressly stated in the ordinance).

The definitions of "lot" and "accessory use or structure" in the Zoning Regulations do not amount to a prohibition, for zoning purposes, of more than one principal structure or use per lot. The definition of "lot" anticipates that a lot will have, now or in the future, "a building," but nowhere suggests that it may have only <u>one</u> principal building, and says nothing about uses *per se.* A lot with two principal buildings still has "a building." The only restriction at all is on the number of "dwelling structures" on a lot.[5] However, the number of dwelling structures is not an issue in this case. The definition of "accessory use or structure" uses the word "principal building," but only in explaining the meaning of what uses or structures are in fact accessory to such a building. It does not say that there can only be one principal use or structure per lot.

The words "lot" and "accessory use or structure" are not used elsewhere in the Zoning Regulations in a manner reasonably revealing that their definitions were intended to prohibit more than one principal use or structure per lot. Even if these definitions could be read to include such an implied one-principal-use or structure provision, that interpretation would be, at best, based on ambiguous bylaw language, and the court thus would construe it in favor of the landowner by not imposing such a limitation on development. "Zoning limitations on the use of private property must be clearly and expressly imposed, and should not be inferred." *Hyrcenko v. Board of Adjustment of City of Elizabeth*, 99 A.2d 430, 432 (N.J. Sup. Ct. App. Div. 1953) (citing 6 McQuillin, <u>Municipal Corporations</u> (3rd ed. 1949), § 20.51, at 127) (expressly rejecting the argument that a definition of "lot" including a one-principal-building provision could function as an affirmative prohibition of more than one principal building per lot). *See also Weeks, supra; Jenness & Burrie, supra,* 2008 VT 117, ¶ 16.

The definition of "lot" in the Subdivision Regulations is perhaps more direct, and includes the description that a lot is land "occupied or to be

---

[5] Of course, one then recalls the guide to statutory construction – "increasingly considered unreliable," however – that if the ordinance drafters knew how to expressly state such a limitation for one category, they could, would, and should have done so for other such limitations. *See R&G Properties, Inc. v. Column Financial, Inc.,* 2008 VT 113, ¶s 21, 44 (August 22, 2008)(cit. omitted).

occupied by no more than one principal building and its accessory buildings." However, it says nothing about structures which are not buildings, or uses. One thus could draw the inference, based on how "lot" is used elsewhere in the Subdivision Regulations, that one who applies to subdivide must not be proposing, at least concurrently with the subdivision, more than one principal building per subdivided lot. Nowhere in the Subdivision Regulations, however, is there an affirmatively stated prohibition against multiple principal buildings per lot. Nor is there is any provision forcing a landowner to subdivide, if not found in the Zoning Regulations. The Subdivision Regulations, which are essentially procedural, and technical in nature, apply only if a subdivision is otherwise required, or the landowner chooses to subdivide an existing parcel.

Neighbors have framed the issue in this case as whether Applicants must be compelled to subdivide. There is no provision of either the Zoning Regulations or the Subdivision Regulations requiring anyone to subdivide, and Applicants do not (apparently) want to subdivide the lot. Applicants seek to add a second principal use and structure to their lot. The question is whether there is an unambiguous restriction on lots with more than one principal use or structure. There is no such restriction in either the Zoning Regulations or the Subdivision Regulations.

If the definition of "lot" in the Subdivision Regulations supports Neighbors' interpretation at all, it does so uncertainly and ambiguously. The court must construe the ambiguity in the landowner's favor. The Subdivision Regulations, like the Zoning Regulations, do not prohibit Applicants from adding a second principal use or structure on their lot.

The parties spent the larger part of their memoranda debating whether this case is controlled by *In re Appeal of Curtis*, 2006 VT 9, 179 Vt. 620 (mem.). In *Curtis*, the Vermont Supreme Court concluded that a small-scale telecommunications facility was allowed inside a church bell tower, under a Newport zoning provision specifically preferring the placement of such facilities on lots already containing other uses and structures. The Court concluded that even if the disputed telecommunications facility could be considered a second principal structure or use, it would not be barred by a general one-principal-use or structure provision. The issue was decided based on the principle that a more specific provision in the ordinance as a whole will control over a more general provision, when both address the same matter and conflict. *Id.* at ¶ 6. That is not the issue in this case. Additionally, according to the opinion, Newport had an express limitation on multiple principal uses or structures. Plainfield does not. *Curtis* is not dispositive of this case.

## FINAL ORDER

For the foregoing reasons: Applicants' motion for summary judgment is **GRANTED**; Neighbors' motion for summary judgment is **DENIED. Subdivision of the former Charlotte Potok lot, to accommodate a telecommunications tower and attendant facilities as proposed by Rinker's Telecom, is not required by the Plainfield Zoning or Subdivision Regulations.**

This matter is returned to the Plainfield ZBA, for further proceedings in accordance herewith.

IT IS SO ORDERED, at Burlington, Vermont this ____ day of September, 2008.

_____
Dennis R. Pearson, Judge
(Specially Assigned)