STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| In re Ridgewood Estates Homeowners' Association | } | |
| & Indian Creek Homeowners' Association | } | Docket No. 57-4-10 Vtec |
| (Appeal of Connelly) | } | |

Decision and Order on ANR Motion for Summary Judgment

Appellant Daniel S. Connelly appealed from a March 16, 2010 decision by the Department of Environmental Conservation of the Vermont Agency of Natural Resources (the ANR) authorizing the Ridgewood Estates Homeowners' Association and the Indian Creek Homeowners' Association (the Homeowners' Associations) jointly to discharge stormwater under National Pollution Discharge Elimination System (NPDES) General Permit 3-9030.[1]

Appellant has appeared and represents himself; the ANR is represented by Catherine J. Gjessing, Esq. The Ridgewood Estates Homeowners' Association is represented by its president, Bruce Erwin, and has not taken an active role on any motions. The City of South Burlington is represented by David W. Rugh, Esq. and has not taken an active role on any motions. The Indian Creek Homeowners' Association has not entered an appearance in this appeal.

Procedural Background

The Court issued a decision on January 26, 2011 (the January Decision) dismissing Questions 1, 2, 3, and 5 from the Statement of Questions, thereby leaving

_____

[1] General Permit 3-9030 was issued on November 19, 2009, and is not subject to challenge in this appeal, as more fully discussed in this Court's January 26, 2011 decision in this matter.

only Amended Questions 4 and 6 to be decided in this appeal.[2]  The Court also ruled that Amended Questions 4 and 6 were more limited in scope than as originally drafted by Appellant. In the January Decision, the Court limited the scope of Amended Question 4 to "whether any term or condition of General Permit 3-9030 precluded the joint or aggregated application as described in Question 4."  January Decision at 14. Similarly, the Court limited Amended Question 6 to "whether the submittal requirements of General Permit 3-9030 were met by the versions of the Engineering Feasibility Analysis and/or the BMP implementation plan submitted in the application." Id.  The ANR has now moved for summary judgment on Amended Questions 4 and 6. The facts stated in this decision are undisputed unless otherwise noted.

Summary Judgment Standard

A grant of "summary judgment is appropriate when, giving the benefit of all reasonable doubts and inferences to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Gade v. Chittenden Solid Waste Dist., 2009 VT 107, ¶ 7, 187 Vt. 7 (citing Mooney v. Town of Stowe, 2008 VT 19, ¶ 5, 183 Vt. 600 (mem.); V.R.C.P. 56(c)).  If the moving party's position is supported with an affidavit and documentary evidence, the opposing party

---

[2]  Prior to the January Decision, Appellant had withdrawn Questions 7, 8, and 9 of the Statement of Questions.  The January Decision addressed Appellant's motion to amend the remaining Questions 1 through 6, and the ANR's motion to dismiss Questions 3, 4, and 5, and either to dismiss Questions 1, 2, and 6, or to narrow their scope to whether the use of the pond in the proposed stormwater management system complies with the terms and conditions of General Permit 3-9030.  In an earlier entry order of July 21, 2010, the Court granted in part the ANR's earlier motion to dismiss Appellant for lack of standing: the Court granted the motion to dismiss in relation to Appellant's financial interests as a condominium owner in the Indian Creek development, but allowed him to continue with the appeal in relation to his asserted interests in observing birds and wildlife at the pond on the Indian Creek development that is part of the stormwater management system at issue in the decision on appeal.

"is required to 'come forward with an opposing affidavit or other evidence that raises a dispute as to the fact or facts in issue.'" U.S. Bank Nat'l Ass'n v. Kimball, 2011 VT 81, ¶ 15 (citing Alpstetten Ass'n, Inc. v. Kelly, 137 Vt. 508, 514 (1979)). That is, a party opposing a motion for summary judgment may not rest on bare allegations alone. Johnson v. Harwood, 2008 VT 4, ¶ 5, 183 Vt. 157.

Factual and Regulatory Background

Ridgewood Estates and Indian Creek Condominiums are housing developments located at the northwest corner of the intersection of Dorset Street and Swift Street in South Burlington. The Ridgewood Estates development was apparently built in phases in the 1970s and 1980s; the Indian Creek Condominiums development was Phase 3 of the Ridgewood Estates development. Callahan Aff. ¶ 5, Attachment A-2 (Mar. 25, 2011). On the portion of the development that is now Indian Creek, there is a pond (the Subject Pond) through which flows an unnamed tributary of Potash Brook. The pond is located on property belonging to Indian Creek Condominiums, near the westerly boundary of the Ridgewood Estates property. Stormwater runoff from these projects flows into the Subject Pond, which flows into the unnamed tributary of Potash Brook, and then flows into Potash Brook, a stream which flows into Lake Champlain. The Subject Pond functions in part as a stormwater detention basin for the stormwater runoff from the Ridgewood Estates and Indian Creek Condominium developments.

In 1977, the ANR's predecessor issued Discharge Permit # 1-0239 to Ridgewood Estates, regulating its stormwater discharges to Potash Brook. The permit allowed the discharge of stormwater into catchbasins, and thence into the unnamed tributary of Potash Brook. In 1981, the ANR issued a letter regarding Phase III of the Ridgewood Estates project, comprising Indian Creek, stating that the proposal for managing the Phase III (Indian Creek) stormwater runoff conformed with the discharge permit (Discharge Permit # 1-0239) issued to Ridgewood Estates in 1977. Callahan Aff. ¶ 5,

Attachment A-3 (Mar. 25, 2011).

In June 2009, the ANR exercised its residual designation authority under the Clean Water Act[3] and issued an initial designation notice for stormwater discharges contributing to the water quality violations in Potash Brook, as well as four other streams not implicated in the present appeal. The ANR also drafted General Permit 3-9030 to regulate the stormwater discharges from sources listed in the residual designation, including from the Ridgewood Estates and Indian Creek Condominium developments.

In July 2009, the Ridgewood Estates Homeowners' Association and the Indian Creek Homeowners' Association contracted with an outside consultant to prepare an Engineering Feasibility Analysis and a Best Management Practices (BMP) Plan, in anticipation of stormwater management improvements that potentially would be required under General Permit 3-9030. They submitted the resulting Engineering Feasibility Analysis and BMP Plan to the ANR and received preliminary approval of the analysis and plan from the ANR in July 2009.

On November 19, 2009, ANR issued stormwater General Permit 3-9030. No party appealed this action of the ANR, and it became final.

General Permit 3-9030 (the General Permit) requires any stormwater discharge that has been designated by ANR as contributing to the violation of water quality standards in Potash Brook (or in any of the other four listed impaired streams) to obtain

---

[3] The statutory and regulatory basis for the ANR's residual designation authority and its authority to regulate discharges through the use of general permits is discussed in more detail in the January Decision. As described in that decision, following extensive litigation, see In re Stormwater NPDES Petition, 2006 VT 91, 180 Vt. 261, this Court required the ANR to exercise its residual designation authority to require discharge permit applications for all stormwater discharges that contribute pollutants to Potash Brook and four other streams. In re: Stormwater NPDES Petition, No. 14-1-07 Vtec, slip op. at 35–37 (Vt. Envtl. Ct. Aug. 28, 2008) (Durkin, J.).

coverage under the General Permit, even if they were already subject to a previously issued state stormwater discharge permit, as were the Ridgewood Estates and Indian Creek Condominium developments (Discharge Permit # 1-0239).

The General Permit contains different administrative requirements and deadlines for three classes of designated discharges from property with existing impervious surfaces (that is, surfaces from which stormwater runs off), distinguishing between discharges that do not hold a previously issued state stormwater discharge permit, and discharges such as those from the Ridgewood Estates and Indian Creek condominiums, which were subject to a previously issued state stormwater discharge permit.

Section III(A)(I) of the General Permit requires owners or operators of properties already subject to a previously issued state stormwater discharge permit to submit, by December 16, 2009, a Notice of Intent to discharge under the terms of the General Permit. General Permit 3-9030 § III(A)(1). Such properties are authorized to discharge subject to the terms and conditions of the General Permit only upon receipt of written authorization to discharge issued by the ANR. General Permit 3-9030 § III(F).

The General Permit also requires owners or operators of properties already subject to a previously issued state stormwater discharge permit, after they have received authorization to discharge under the General Permit, to conduct and, by June 30, 2011, to submit an Engineering Feasibility Analysis as well as to submit a Best Management Practices (BMP) Plan for implementing the BMPs identified by the Engineering Feasibility Analysis. General Permit 3-9030 § IV(A)(1). The Engineering Feasibility Analysis and BMP plan are intended to demonstrate how the property will meet the requirements in the Vermont Stormwater Management Manual for Recharge Volume, Channel Protection Volume, and Water Quality Volume. General Permit 3-9030, Appendix A.

As well as issuing the General Permit, also on November 19, 2009, the ANR issued the final designation or listing of discharges requiring coverage under the

5

General Permit. Both "Ridgewood Condos" and "Indian Creek" were designated as discharges from a property with existing impervious surfaces and subject to a previously issued state stormwater discharge permit, listing them each as holding Discharge Permit # 1-0239. Appellant did not appeal the ANR's November 19, 2009 residual designation action.

On December 15, 2009, the Ridgewood Estates and Indian Creek Homeowners' Associations (the Homeowners' Associations) submitted a joint application for coverage under the General Permit by submitting, for ANR approval, Notice of Intent # 6285-9030 to discharge under General Permit 3-9030. In their joint Notice of Intent, the Homeowners' Associations proposed "Stormwater System Improvements for Ridgewood/ Indian Creek Condominiums," naming Potash Brook as the receiving waters.

The Subject Pond was mapped in the Vermont Significant Wetlands Inventory, effective January 1, 2010. However, the legislative act establishing that date retroactively as the date on which such wetlands would be subject to ANR regulation did not take effect until May 18, 2010.[4] 10 V.S.A. § 902, and see effective dates in 2009, No. 31, § 14 and 2009, No. 110 (Adj. Sess.), § 20.

On March 16, 2010, the ANR took the action which is the subject of this appeal. It approved the Homeowners' Associations' joint Notice of Intent # 6285-9030, authorizing the discharge of stormwater from Ridgewood Estates and Indian Creek Condominiums to Potash Brook, which had been authorized under the Associations' state stormwater Discharge Permit # 1-0239, to now be authorized under General Permit 3-9030.

---

[4] Vermont Wetland Rule 6.12 provides for the "maintenance, reconstruction, and routine repair of structures" located in a wetland that were in existence prior to February 23, 1990, and allows additions to such structures which do not involve substantial expansion or modification in a wetland or buffer.

Question 4 of the Statement of Questions

Question 4 asks whether any term or condition of General Permit 3-9030 precludes ANR from approving the joint application for coverage of the stormwater discharges from Ridgewood Estates and Indian Creek Condominiums. Appellant argues essentially that because they are separately listed in the November 19, 2009 residual designation—although they are both shown as being covered by a single previously issued state stormwater Discharge Permit # 1-0239—they are precluded from making a joint application for coverage under the General Permit.[5]

Whether construing the terms and conditions of a permit, or of a statute or regulation, the Court relies on the normal rules of statutory construction. Agency of Natural Res. v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573 (mem.). That is, the Court must interpret the language of the General Permit, if possible, according to its plain and ordinary meaning. See In re Stowe Club Highlands, 164 Vt. 272, 279 (1995). The primary concern is to implement the intent of the General Permit's drafters. See In re Williston Inn Group, 2008 VT 47, ¶ 14, 183 Vt. 621 (mem.). The Court must give effect to the whole and every part of the permit, Stowe Club Highlands, 164 Vt. at 280, to "avoid rendering one part mere surplusage," In re Appeal of Jenness and Berrie, 2008 VT 117, ¶ 24, 185 Vt. 16, and so that the construction does not produce an absurd result, Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287 (citations omitted).

The General Permit describes permit applicants in both the plural and the singular, using the terms "owners or operators," as well as "owner or operator."

---

[5] Nothing requires the separate stormwater inlet pipes into the Subject Pond to be treated as separately permitted "point sources." Rather, it is the final outlet of a manmade stormwater management system that is considered the "point source" to be regulated. See Northwest Environmental Defense Center v. Brown, 640 F.3d 1063, 1079–80, 1087 (9th Cir. 2011) (holding that a system of ditches, culverts, and channels that collect and then discharge stormwater into a protected water is the point source, rather than each ditch, culvert, or channel).

Compare, e.g., General Permit 3-9030 § I(C) ("[o]wners and operators of property from which there is a designated discharge") with General Permit 3-9030 § I(F) ("an owner or operator of a property with a designated discharge"). Similarly, Appendix A, which governs the permit submittal requirements for properties that are subject to a previously issued state stormwater discharge permit, uses the term "permittees" as well as the term "permittee." Moreover, the definition of person in the General Permit is defined to include the plural terms "joint ventures," "partnerships," and "associations." It is also "an accepted rule of statutory construction that words used in the singular may be read as to include the plural, and the plural the singular, except where a contrary intention plainly appears." In re Boardman, 2009 VT 42, ¶ 35, 186 Vt. 176 (citing In re N.H., 135 Vt. 230, 235 (1977)).

No contrary intention appears in the General Permit. The intent of General Permit 3-9030 is to bring stormwater discharges into the Potash Brook and four other streams under the authority of the General Permit, so that violation of the water quality standards for those streams caused by those stormwater discharges can be addressed and corrected. See General Permit 3-9030 § I(A).

Nothing in either the plain language of the General Permit or its apparent intent restricts applications for coverage under this permit to being filed by single entities rather than being filed jointly in appropriate cases. In particular, as these two developments were originally related, and shared the original state stormwater Discharge Permit # 1-0239, it makes administrative sense for their coverage under the General Permit (and any associated improvements to the stormwater management system that serves both developments) to be treated in a joint Notice of Intent application and an associated Engineering Feasibility Analysis and BMP Plan.

For the purposes of the present application for coverage under General Permit 3-9030, because the Subject Pond and its outlet handle stormwater runoff from both Ridgewood Estates and Indian Creek Condominiums, a joint application for coverage

under the General Permit is not forbidden by the terms of the General Permit and is a reasonable approach to addressing the stormwater management system that serves the two developments.[6]

Accordingly, Summary Judgment is GRANTED to the ANR that no term or condition of General Permit 3-9030 precludes the joint application of Ridgewood Estates and Indian Creek Condominiums for coverage under the General Permit.

Question 6 of the Statement of Questions

Amended Question 6 asks whether the ANR violated the terms and conditions of General Permit 3-9030 by approving the Homeowners' Associations' Notice of Intent on March 16, 2010, even though it was submitted with an Engineering Feasibility Analysis and BMP Plan that had received preliminary approval from the ANR in July 2009.

General Permit 3-9030 took a two-stage approach to applications for property residually designated by the ANR, but which held a previously issued state stormwater discharge permit, such as Ridgewood Estates and Indian Creek Condominiums. To be authorized to discharge under the terms of the General Permit, a property with a previously issued state Stormwater Discharge Permit only had to comply by December 16, 2009 with the application requirements of General Permit § III(A)(1), by submitting a Notice of Intent to discharge under the General Permit, with all necessary attachments. The General Permit did not require applicants to attach to the Notice of Intent either an Engineering Feasibility Analysis, or the plan for implementing the BMPs identified in that analysis.

Ridgewood Estates and Indian Creek Condominiums submitted the required

---

[6]   Any issues regarding allocating responsibility to co-permittees in a potential enforcement case are beyond the scope of this appeal, and are in any event specific to the circumstances of any such case. See. e.g., Secretary, Vermont ANR v. Handy Family Enterprises, 163 Vt. 476, 487 (1995).

notice of intent by the deadline of December 16, 2009. They were not required to submit an Engineering Feasibility Analysis or a BMP Plan at that time, but neither were they prohibited from doing so.

The second stage under General Permit 3-9030 for properties that hold a previously issued state stormwater discharge permit occurs after the properties have received ANR approval of their Notices of Intent and are thereby authorized to discharge under the General Permit. Such properties must then comply with the Permit Submittal Requirements and Collection, Treatment and Control Standards articulated in § IV(A) of the General Permit, including the requirement that by June 30, 2011, they must submit an Engineering Feasibility Analysis, with design plans for implementing the BMPs identified in the analysis.

By its own terms, the General Permit contemplated that some applicants might have had an Engineering Feasibility Analysis approved before the General Permit took effect, as reflected in the requirement of § IV(A)(1) that such applicants must simply resubmit the analysis by June 30, 2011, together with their BMP Plan, in lieu of conducting a new analysis. General Permit 3-9030 § IV(A)(1). Because Ridgewood Estates and Indian Creek Condominiums had received approval of their Engineering Feasibility Analysis and BMP Plan prior to the effective date of General Permit 3-9030, they were simply required to resubmit the Engineering Feasibility Analysis and BMP Plan for ANR approval by June 30, 2011. Thus, as of the ANR's March 16, 2010 approval of the Homeowners' Associations' Notice of Intent and the ANR's associated authorization to discharge, the application was in compliance with the General Permit.[7]

Therefore, summary judgment is GRANTED to the ANR that its March 16, 2010 approval of Notice of Intent 6285-9030, authorizing the Ridgewood Estates

---

[7] Any question regarding any later submittal by the Homeowners' Associations, or later action taken by the ANR, after the ANR's March 16, 2010 action that is the subject of this appeal, is beyond the scope of this appeal.

Homeowners' Association and the Indian Creek Homeowners' Association to discharge under the General Permit, did not violate the terms and conditions of General Permit 3-9030 as argued by Appellant in Question 6.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the ANR's Motion for Summary Judgment is GRANTED, as to Amended Question 4, that the terms and conditions of General Permit 3-9030 do not preclude a joint application for coverage under the permit. The ANR's Motion for Summary Judgment is also GRANTED, as to Amended Question 6, that the authorization to discharge under General Permit 3-9030 issued to the Ridgewood Estates Homeowners' Association and the Indian Creek Homeowners' Association to discharge under the General Permit, did not violate the terms and conditions of General Permit 3-9030.

This decision concludes this appeal, leaving in place the ANR's March 16, 2010 approval of Notice of Intent 6285-9030 to the Ridgewood Estates Homeowners' Association and the Indian Creek Homeowners' Association, allowing them to discharge under the authority of General Permit 3-9030.

Done at Berlin, Vermont, this 9th day of August, 2011.

_____
Merideth Wright
Environmental Judge