2005 VT 23

**In re Appeal of Stuart RICHARDS**

[872 A.2d 315]

No. 03-543

▬▬▬▬▬▬▬▬▬▬▬▬

¶ 1. February 9, 2005. This is the second appeal in litigation between neighbors Stuart Richards and Paul Nowicki concerning Nowicki's desire to build a house on 84 Elm Street in the Town of Norwich. In this appeal, Richards claims the environmental court erred by con-

cluding that 84 Elm Street and an adjoining parcel Nowicki owns are two separate lots for zoning purposes because a right-of-way providing access to Richards's property divides them. We reverse.

¶ 2. In 1996, Nowicki bought 84 Elm Street and an adjoining parcel, 76 Elm Street, from an individual who had held title to both parcels since 1967. Richards and his wife live behind 76 Elm Street and must access their property by a right-of-way over 84 Elm Street along the border with 76 Elm Street. The 76 Elm Street parcel had been improved with a house when Nowicki purchased the property, but 84 Elm Street was an empty lot. Nowicki sought a building permit to construct a house for his mother on 84 Elm Street. Richards opposed the permit, and the present litigation ensued.

¶ 3. Richards continued his challenge to the building permit for 84 Elm Street all the way to this Court. See *In re Richards*, 174 Vt. 416, 819 A.2d 676 (2002). In his first appeal, Richards argued that Nowicki could not legally develop the 84 Elm Street property because the parcel had legally merged with 76 Elm Street in 1981 when the town adopted zoning regulations establishing a minimum lot size of 20,000 square feet. The 76 Elm Street parcel did not meet that minimum size requirement, and therefore it merged with 84 Elm Street to form one conforming lot. Once merged, Richards argued, Nowicki could not develop the parcels separately without violating the town's minimum lot size ordinance. This Court agreed with Richards, concluding that 84 Elm Street could not be developed separately because doing so would leave the 76 Elm Street parcel nonconforming under the zoning ordinance. *Id.* at 420, 819 A.2d at 679. We explained that the state's small lot statute, 24 V.S.A. § 4406(1), did not protect 76 Elm Street as an undersized lot because of the uni-

fied ownership of the properties since 1967:

> Due to the unified ownership of the parcels in 1967, however, the enactment of the minimum lot size regulations in 1981 prevented any subsequent landowner from taking advantage of § 4406(1)'s small lot exception to treat [76 Elm Street] separately from [84 Elm Street]. For the purposes of development, therefore, the parcels had merged into one property subject to a 20,000 square foot minimum lot size requirement at the time Nowicki purchased them in 1996.

*Id.* at 420-21, 819 A.2d at 680. Notwithstanding that conclusion, we remanded the case to the environmental court so that it could consider, in the first instance, Nowicki's argument that the right-of-way between 76 and 84 Elm Street effectively separated the parcels, preventing the merger that otherwise took place by operation of law in 1981. *Id.* at 426, 819 A.2d at 684; see *Wilcox v. Vill. of Manchester Zoning Bd. of Adjustment*, 159 Vt. 193, 197, 616 A.2d 1137, 1139 (1992) (holding that, in some circumstances, a right-of-way "because of location and function" may separate two parcels so that they cannot be used as one lot).

¶ 4. The court took evidence on the issue and rendered the decision that forms the basis of this appeal. In its order, the court found that 84 Elm Street and Richards's property are bounded on one side by the Blood Brook. The 84 Elm Street boundary with Blood Brook is about eighteen feet lower in elevation than 76 Elm Street, and both properties slope away from Elm Street down towards Richards's land. The court found that the right-of-way at issue is a twenty-foot-wide private road or driveway used by

Richards and his wife for ingress and egress to their property behind 76 Elm Street. The right-of-way has been used to access the rear basement entrance of 76 Elm Street as well. After purchasing the property, Nowicki regraded the right-of-way by removing a hump that impaired the view of Elm Street from Richards's property at the end of the right-of-way. Nowicki also installed a three-foot-high retaining wall running alongside the right-of-way from Elm Street to the back of the house on 76 Elm Street. The environmental court concluded that the parcels had not merged due to the right-of-way, reasoning:

> [A]lthough the right-of-way is private, these properties are equivalent to those at the end of and flanking the end of a short dead-end village street. While a person capable of walking and of going up and down steps or a slope would be able to cross from the 76 Elm Street parcel onto the 84 Elm Street parcel, or vice-versa, it is not possible to use the two parcels as a single parcel, primarily because the owners of those two parcels cannot block the use of the right-of-way by the owners of [Richards's] parcel. The right-of-way occupies the entire adjacent boundary; that is, it is not possible to cross from the 76 Elm Street parcel onto the 84 Elm Street parcel without crossing the right-of-way.... While the 84 Elm Street parcel could have been used as a single lot if it had been in common ownership with [Richards's] property, it cannot be used as a single lot in common ownership with the 76 Elm Street lot.

The court emphasized that Richards's property had numerous potential uses under the town's zoning ordinance, including a day care center, a small group home, a home occupation, or a two-family residence. The potential for Richards to use the right-of-way so intensively prevented the two lots from merging. Thus, the court concluded, Nowicki could develop the two lots separately. This appeal followed.

¶ 5. On appeal, Richards argues that the environmental court's findings do not support its conclusion that Nowicki's two Elm Street parcels had not merged. According to Richards, upholding the environmental court's decision here would defeat the Legislature's intent to limit nonconforming uses of property to uses existing prior to the effective date of zoning. Because Richards does not contest the findings upon which the environmental court's decision rests, we review the court's legal conclusions using a nondeferential and plenary standard. *Catamount Slate Prods., Inc. v. Sheldon*, 2003 VT 112, ¶ 14, 176 Vt. 158, 845 A.2d 324.

¶ 6. At issue here is the impact of the state's small lot statute, 24 V.S.A. § 4406(1), to property divided by a right-of-way that was held in common ownership at the time zoning became effective in the Town of Norwich. The statute exempts from the town's minimum lot size regulation any property held in separate and unaffiliated ownership from "surrounding properties" on the effective date of a town's minimum ·size zoning regulation. *Richards*, 174 Vt. at 419-20, 819 A.2d at 678-79. Adjoining property held in common ownership on the effective date of zoning is deemed merged by operation of law under ·the statute because one goal of zoning is to phase out nonconforming uses, including undersize lots. *Id.*; *Drumheller v. Shelburne Zoning Bd. of Adjustment*, 155 Vt. 524, 529, 586 A.2d 1150, 1152 (1990). Once merged,

the property may not be developed in a manner that would recreate the nonconforming use. *Drumheller*, 155 Vt. at 529-30, 586 A.2d at 1152.

¶ 7. Although § 4406(1) establishes a bright line rule for the merger of adjoining lots held in common ownership, there are limited circumstances under which the bright line rule may not apply. In *Wilcox*, this Court explained that contiguity "is a strong indicator that two lots should not be deemed separate within the meaning of § 4406(1)," but noted that contiguity is not the only factor. 159 Vt. at 197, 616 A.2d at 1139. *Wilcox* held that, depending on its location and function, a right-of-way could separate a piece of property so that it cannot be used in the ordinary manner as a single lot. *Id.* In those circumstances, § 4406(1) would not consider the properties adjoining and no merger would occur. *Id.* The Court cautioned, however, that while contiguity does not "always equal[] unity," the existence of a right-of-way between two parcels does not always mean the parcels are separate. *Id.* at 198, 616 A.2d at 1140. We noted that:

> The term "right-of-way" on a deed is traditionally construed as an easement, absent additional descriptive language. However, a right-of-way could be a well-travelled road, or simply lines on a plan that pose few practical barriers to enjoyment of the property as a single parcel.

*Id.* (citation omitted). The Court concluded by emphasizing the "strong legislative intent to phase out nonconforming uses" and its expectation that the *Wilcox* holding would not "invite claims of separate-lot status based solely on the configuration of a lot as depicted on a deed." *Id.*

¶ 8. *Wilcox* did not elaborate on how a trial court must analyze a claim of non-

merger due to the existence of a right-of-way. Section 4406(1) and the cases interpreting it establish, however, that the focus must be on the circumstances existing at the time zoning regulation became effective because the only property entitled to small lot protection is property held in individual and unaffiliated ownership on the effective date of zoning. See *Richards*, 174 Vt. at 420, 819 A.2d at 679 (explaining that the small lot statute applied only if Nowicki showed that his two parcels were in separate, individual, and nonaffiliated ownership in 1981 when Norwich adopted the 20,000 square foot minimum lot size ordinance); 3 A. Rathkopf, The Law of Zoning and Planning § 49:13 (1997) (explaining that when dealing with substandard lots, "the point of reference is the effective date of the bylaw"). Unless the zoning ordinance provides otherwise, small lots held in unaffiliated and separate ownership on the effective date of zoning regulation do not lose their protected status if, subsequent to the effective date of zoning, they come into common ownership. *In re Weeks*, 167 Vt. 551, 555, 712 A.2d 907, 909 (1998). Conversely, once two parcels merge by operation of law, they remain so notwithstanding a subsequent owner's efforts or desire to separate them for development. *Drumheller*, 155 Vt. at 529-30, 586 A.2d at 1152. Thus, in this case, either the adjoining parcels merged because they were held in common ownership in 1981 as we held in the earlier appeal, or they did not merge at that time because the location and function of the right-of-way rendered the two parcels functionally separate and distinct.

¶ 9. Nowicki had the burden "to show that the parcels were held in 'individual and separate and non-affiliated ownership' when the 20,000 square foot minimum lot size regulations were enacted in 1981." *Richards*, 174 Vt. at 420, 819 A.2d at 679. His evidence, however, related exclusively to the present and potential

uses of the right-of-way, and the environmental court's analysis was deficient in relying on this evidence. We are left then with only the impediments to overall use of the lots that flow from the presence of a right-of-way. See Restatement (Third) of Prop.: Servitudes § 4.9 (2000) (outlining servient estate owner's right to use property burdened by a servitude). Nowicki cannot block the right-of-way by building a structure on it; he cannot fence his property — for example, to keep animals on it — because the fence would obstruct the right-of-way. If we were to hold that these impediments alone were sufficient to prevent merger in 1981, then the existence of a right-of-way would always prevent merger, a conclusion we rejected in *Wilcox.* 159 Vt. at 197-98, 616 A.2d at 1140.

¶ 10. The impediments do not prevent use of the property as one lot in many ways. For example, in *Weeks*, owners of a preexisting small lot purchased a second adjoining lot on which they "maintained a garden, parked their mobile home, and built a garage for storage." 167 Vt. at 552, 712 A.2d at 908. Thus, 76 and 84 Elm Street can be used together in virtually any way a primary residence can be used with surrounding land. It is not uncommon in Vermont that uses of land, for example, for a garden, are separated from the residence by a driveway.

¶ 11. Nowicki argues that the environmental court correctly determined that the two parcels did not merge because Richards's actual and potential use of the right-of-way impairs his ability to enjoy his property as a single lot. Again, the present and potential use of the right-of-way cannot determine whether merger occurred in 1981 when the town adopted the 20,000 square foot minimum lot size. The *Wilcox* exception to merger asks the court to look at the *function* and *location* of the right-of-way to determine if it effectively prevents the use of the property as a single lot. Here, the right-of-way functions as a driveway to serve a single residence. Although it divides the 76 and 84 Elm Street parcels, it is apparent from the record that the right-of-way's location renders the configuration of the merged lot consistent with the configuration of many single lots with driveways that separate one part of the lot from another.

¶ 12. We conclude that the environmental court's findings do not support its conclusion because the findings do not address the relevant inquiry under *Wilcox* as of 1981, and the use of a right-of-way as a driveway does not alone make the property on one side of the driveway separate from that on the other side. Thus, the 76 Elm Street and 84 Elm Street properties merged to form a single conforming lot in 1981, and, as we held in our first decision, the development of 84 Elm Street would leave 76 Elm Street nonconforming in violation of the Norwich zoning ordinance.

*Reversed.*