STATE OF VERMONT

ENVIRONMENTAL COURT

```
                                    }
In re: Appeal of Jenness and Berrie }        Docket No. 134-7-04 Vtec
                                    }
                                    }
```

Decision and Order

Appellant-Applicants Frederick L. Jenness and David S. Berrie appealed from the decision of the Zoning Board of Adjustment (ZBA) of the Town of Dummerston denying a zoning permit for the construction of a house on Stickney Brook Road. Appellant-Applicants are represented by Timothy J. O'Connor Jr., Esq. and Thomas W. Costello, Esq.; the Town is represented by Robert M. Fisher, Esq., and Interested Persons Judith and Raymond Enello are represented by Walter G. French, Esq.

Prior decisions in this matter resolved issues relating to the applicable setbacks and building envelope, and as to the scope of the exemption for existing small lots, but recognized that material facts remained in dispute as to whether the 1.1-acre parcel at issue in this case constituted an existing small lot at the time zoning was adopted in Dummerston, or whether it had effectively merged with another parcel across Stickney Brook Road.

After the conclusion of the prior motions, including the reinstatement of the matter for trial, the only issue remaining for trial was whether, in 1971 (when the first[1] zoning ordinance was adopted), Stickney Brook Road's use was such that it functionally separated Appellant-Applicants' 1.1-acre parcel from the 0.9-acre parcel across the road. It was

---

[1] The parties were unable to determine the provisions of the interim zoning ordinance adopted somewhat earlier.

1

Appellant-Applicants' burden to show that, in 1971, the location and function of the road rendered the two parcels "functionally separate and distinct;" In re Appeal of Richards, 2005 VT 23, ¶¶8–9, 178 Vt. 478, 481–82 (2005), and see Appeal of Weeks, 167 Vt. 551, 553–54 (1998); that is, to show that the road effectively separated the parcels so that they could not then "be used in the ordinary manner as a single 'lot.'" Wilcox v. Village of Manchester Zoning Bd. of Adj., 159 Vt. 193, 197 (1992).

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. A site visit had already been taken in November of 2003 with the parties and their representatives, in connection with an earlier appeal. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Appellant-Applicants own a 1.1-acre parcel of land in the Rural Residential zoning district. The parcel is in the form of a very shallow trapezoid, bounded on its southerly side by a steep hill at the boundary of the Enello property, and on its other sides by segments of Stickney Brook Road, an unpaved town road. One segment of Stickney Brook Road is southeasterly of its intersection with Leonard Road; one segment of Stickney Brook Road is between its intersection with Leonard Road and its intersection with Beaver Pond Road; and the third segment turns to the south beyond the intersection with Beaver Pond Road.

As of 1940, Frank Amato owned in a single deed both the subject 1.1-acre property and a 0.9-acre property (with a house and garage) located across Stickney Brook Road east of Leonard Road. In 1940, Amato sold the 0.9-acre parcel and retained the unimproved 1.1-acre parcel. In two transactions in 1960, Carl and Bernice Anderson purchased both the improved 0.9-acre parcel and the unimproved 1.1-acre parcel from their respective owners. From 1960 until 2001, the Andersons owned both parcels, holding them in separate deeds;

2

the property was taxed as a single two-acre parcel.

The zoning ordinance adopted in 1971 provided a two-acre minimum lot size for the Rural Residential zoning district in which the property is located. Zoning Bylaw, §220. At the time of adoption of zoning in 1971, the property held in common ownership met the two-acre minimum-lot-size requirement.[2] A new zoning ordinance was adopted in March of 2001 which retained the two-acre minimum lot size for this zoning district. That ordinance also contained a merger provision, Zoning Bylaw, §260, allowing the enlargement of a parcel of land by the purchase of an adjoining parcel of land, even if undersized, as the resulting parcel would be a conforming (or a less-nonconforming) parcel in common ownership.

In July of 2001, Bernice Anderson[3] sold the 1.1-acre unimproved parcel to Appellant-Applicants. Later in 2001, she sold the 0.9-acre improved parcel to other buyers not involved in this litigation.

Under §701 and as the term "land development" is defined in Article VIII of the March 2001 Zoning Bylaw, the sale to Appellant-Applicants constituted a subdivision of the combined two-acre parcel and required a permit from the Zoning Administrator regardless of the size of the original or the resulting parcels. No such permit was applied for or obtained. No evidence was presented at trial as to whether or when the Zoning

---

[2] Although the land lying under Stickney Brook Road is presumptively owned by the adjoining landowners, if it is not counted in the lot size, In re Bailey, 2005 VT 38A, ¶17, 178 Vt. 614, 619 (2005), then even the combined lot may have been undersized and nonconforming as of the adoption of zoning in 1971.

[3] Both 2001 sales were carried out under a power of attorney on behalf of Bernice Anderson.

Administrator[4] was made aware of that transaction at any time prior to Appellant-Applicants' application in late 2002 or early 2003 for a building permit on the 1.1-acre property. See Appeal of Jenness and Berrie, Docket No. 56-4-03 Vtec (Vt. Envtl. Ct.) (appeal withdrawn January 13, 2004). Unless the two parcels were functionally separate lots when zoning was adopted in 1971, that is, were then unable to be used in the ordinary manner as a single parcel, this subdivision was impermissible, as it created two undersized lots, both nonconforming as to lot size. "Lots that are smaller than the minimum lot size requirements are nonconforming uses, allowed only because the use preexists the applicable zoning requirement. A goal of zoning is to phase out such uses." Drumheller v. Shelburne Zoning Bd. of Adjustment, 155 Vt. 524, 529 (1990). "Adjoining property held in common ownership on the effective date of zoning is deemed merged by operation of law under the statute because one goal of zoning is to phase out nonconforming uses, including undersize lots. Once merged, the property may not be developed in a manner that would recreate the nonconforming use." Richards, 2005 VT 23, ¶6, 178 Vt. at 480–81 (internal citations omitted).

Amendments to the state's zoning enabling act in 2004 also allowed municipalities to adopt ordinance provisions less restrictive of the development of existing small lots than the state statute, 24 V.S.A. §4412(2)(C); however, the Dummerston zoning bylaw has not been amended since 2001 and no such provision has been proposed.

Stickney Brook Road has remained in its present location with respect to the subject

---

[4] Under 24 V.S.A. §4303(13) and (16), as amended in 2004, nonconformities (including nonconforming lots) are defined to include those "improperly authorized as a result of error by the administrative officer," that is, the Zoning Administrator, affecting whether future applications on such property are analyzed under the municipality's ordinance pertaining to nonconformities.

property and with respect to its intersection with Leonard Road ("the intersection") from before 1960 to the present day, although it has been extended to the southwest and although some of the road-naming conventions in the area may have changed in recent years. In 1971 it was a gravel or dirt road or lane leading westerly uphill from Route 30, past the waterfalls known as "the Ledges," where another road extended towards the south. It passes through a generally wooded and rural residential area. Just beyond "the Ledges" the road turns northwesterly uphill and runs between the parcels at issue in this case, past the intersection with Leonard Road,[5] and past the remainder of the frontage of the 1.1-acre parcel. Stickney Brook Road turns back to the south at its intersection with Beaver Pond Road. In 1971 the segment of Stickney Brook Road past the Beaver Pond Road intersection was not a through road and ended just past what is now the Enello property. Beaver Pond Road extended from its intersection with Stickney Brook Road towards the west; in 1971 Beaver Pond Road served only a few houses and a large farm property which kept sheep and cattle, rented a field to a local doctor for horses, included a small sawmill, and provided a shack or camp to a logger who did some logging and other work on the farm property. In 1971 only approximately seven to ten families had to go through the intersection of Stickney Brook Road with Leonard Road, and no more than that number had to pass along the segment of Stickney Brook Road between the 1.1-acre parcel and the 0.9-acre parcel, to conduct their ordinary business away from home. Occasionally farm vehicles, or service vehicles making deliveries of milk or heating oil would pass through the intersection. Very occasionally, logging trucks would pass through the intersection.

A commercial enterprise known as the Jelly Mill had been located near Route 30 but

---

[5] Leonard Road is a through road to the village of West Dummerston, which can also be reached via Route 30.

5

had been destroyed by fire in 1969, was therefore closed prior to 1971, and remained closed thereafter. In any event traffic from it did not travel up the road as far as the subject property. In 1971 "the Ledges" were a popular spot for swimming and to some extent for washing cars, but most vehicles reached that area via Route 30 and returned to Route 30 without traveling farther up Stickney Brook Road or between the parcels at issue in this case or through the Leonard Road intersection. Parents and children from the neighborhood around the subject property walked down the road to the Ledges.

In 1971, few enough families lived in the area so that a Volkswagen micro-bus was a large enough vehicle to serve as the school "bus" to transport the school-aged children to school, through the intersection. People walked along the road at the intersection and crossed both Stickney Brook Road and Leonard Road on foot to reach the mailboxes, which were then located on Leonard Road just north of Stickney Brook Road. People walked their unleashed dogs along the road. Children took advantage of the downhill run of Leonard Road from north to south to ride sleds in the winter and go-carts in the summer down Leonard Road and onto the subject property, and bicycled along the road to each others' houses. In 1971 the limited level of traffic did not inhibit the use of the road by pedestrians or their access from one side of the road to the other.

A residential development in an area off Beaver Pond Road known as Jelly Mill Hill was developed in the mid-1970s, after the time period that is the subject of this proceeding. Traffic in the area and usage of Stickney Brook Road and Leonard Road has increased gradually since that time, as the roads beyond the intersection have been extended to the south and the west and the population using the roads has increased since that time. However, the use of the roadway at the subject property after 1971 is not at issue in the present proceeding. Richards, 2005 VT 23, ¶8, 178 Vt. at 481, citing 3 A. Rathkopf, The Law of Zoning and Planning §49:13 (1997) as "explaining that when dealing with substandard lots, 'the point of reference is the effective date of the bylaw.'"

6

As noted by the Supreme Court in another context in <u>Trickett v. Ochs</u>, 2003 VT 91, ¶24, 176 Vt. 89, 98 (2003), it is a "traditional New England pattern" for a farmhouse to lie "directly across a rural dirt road" from other farm buildings and from some of the land belonging to the farm. At least in rural Vermont, the mere presence of a residence on one side of an unpaved rural road, across from other commonly owned but undeveloped land on the other side of the unpaved rural road, does not of itself mean that the land cannot be used "in the ordinary manner" as a single parcel. <u>Wilcox v. Village of Manchester Zoning Bd of Adj.</u>, 159 Vt. 193, 197–98 (1992). Rather, the particular circumstances must be examined to determine whether Appellant-Applicants have carried their burden of proving that the two-acre property at issue in the present case could not have been used in 1971 "in the ordinary manner" as one parcel.

They have not done so. In 1971 the rural dirt road was sufficiently little used so that the 1.1-acre parcel could have been used "in the ordinary manner" with the improved 0.9-acre parcel as a single parcel. The 1.1-acre parcel could have supported a number of uses or structures accessory to the residential use of the 0.9-acre parcel, including a garden; a play area; a garage, workshop or other accessory structure; or a small barn or shed and fenced field to house a small number of domestic animals or livestock. Even the use of the 1.1-acre parcel simply as a hayfield or an unimproved open space parcel to preserve the view from the house is a legitimate use as accessory to the 0.9-acre parcel. Such uses were not prevented by the location and function of the segment of Stickney Brook Road between the two parcels, as it existed in 1971.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that, as of the adoption of the two-acre lot size in the 1971 Zoning Bylaw, Stickney Brook Road did not interfere with the use and enjoyment of the property in the ordinary manner as a single two-acre parcel, and therefore Appellant-Applicants' 1.1-acre parcel is not entitled to the

7

so-called <u>Wilcox</u> exception to merger.   <u>In re Richards</u>, 2005 VT 23, ¶11, 178 Vt. at 482.


        Dated at Berlin, Vermont, this 18th day of July, 2007.


                                 _____

                                 Merideth Wright
                                 Environmental Judge