STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Kirschner Home Construction Application | } | Docket No. 226-10-07 Vtec |
| (Appeal of Kirschner) | } | |
|  | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellant Andras Kirschner appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Charlotte denying his application to construct a residence on property at 4717 Spear Street. Appellant is represented by Robert C. Roesler, Esq. and Scott A. McAllister, Esq.; the Town of Charlotte is represented by Amanda S. E. Lafferty, Esq.

Appellant moved for summary judgment on all issues raised in his appeal, relating to whether the property at issue in this appeal consists of two contiguous separate parcels of one acre and two acres in size, respectively, that may be developed and conveyed as separate lots. The following facts are undisputed unless otherwise noted. All references to the zoning ordinance are to the 2006 Land Use Regulations unless specifically otherwise cited.

Appellant, Andras Kirschner, and his sister, Melinda Kirschner, own property at 4717 Spear Street (also known as Spear Street Extension), on the easterly side of the road, in the Rural zoning district. The property totals approximately three acres. Prior to the events at issue in this appeal, the property consisted of two contiguous lots in separate ownership: a northerly lot of approximately one acre in area and a southerly lot of approximately two acres in area. For ease of discussion of the issues in this motion, this decision will refer to the northerly one-acre lot as "the north lot" and to the southerly, two-

1

acre lot as "the south lot," and will refer to the combined three acres of property as "the combined three-acre property."

The parties have not provided a copy of the site plan or any diagram of the property, although the engineer's site plan was referred to as being attached to the Kirschner zoning permit application approved on April 25, 2006, and the cover page of that application has been provided. Without the site plan it is difficult for the Court fully to understand the various nonconformities that may have implications in this case. Based only on the engineer's description of the property in a consultation letter provided as the Town's Exhibit 5, the combined three-acre property is L-shaped, with 375 feet of road frontage. It slopes steeply down to the east, from the road to a stream that flows southerly through the parcel, and slopes up on the other side of the stream to a ridge.

Both lots existed as separate lots, apparently under separate ownership, prior to June of 1966, when the Town of Charlotte first adopted zoning.[1] In connection with the present motions the parties have only provided a copy of the 2006 ordinance and excerpts from the 1997 ordinance. The parties have not provided the dimensional requirements in this district as of the initial zoning ordinance, or as of any subsequent zoning ordinances until 1997. Without that information it is impossible for the Court to determine when the combined lot or the north and the south lots became nonconforming as to either lot's area, or to determine whether or when the house locations on the north and the south lots were or became nonconforming as to any other dimensional requirement.

A zoning permit was issued in 1970 for the installation of a mobile home in the "southwest corner" of the north lot. The permit described the north lot as 1 acre in area, and stated the front setback (from the right-of-way) as 85 feet, the rear setback as 112 feet,

---

[1] The Town first adopted a zoning ordinance on June 20, 1966; amendments and revisions of the zoning ordinance were adopted in 1967, 1969, 1970, 1971, 1973, 1978, 1982, 1987, 1995, 1997, 2002, and 2006.

and the shorter side setback as 75 feet. As a zoning permit was issued for the placement of the mobile home in that location, these setbacks should have been in compliance with the zoning requirements at the time. At least as of that date, the north lot also had the right to draw water from an adjacent lot to its north.

At some point prior to 1992, a mobile home was also installed on the south lot. At least as of 1992, both lots had separate functioning septic systems and were supplied with potable water. Material facts have not been provided to establish whether the water supply for the south lot was separate from that shared by the north lot and its northerly neighbor as of that time. The engineer's affidavit establishes that in 2008 there was some type of well "in use" on the south lot. Neither party has claimed that the septic and water systems serving either lot ever failed or were replaced or removed.

As the parties have not provided any survey or diagram showing the locations and sizes of the former mobile homes and their accessory sheds, garages or outbuildings, nor the dimensional requirements of the zoning ordinances in effect when those mobile homes were installed, the Court cannot determine whether or when they became nonconforming due to the front setback or any other dimensional requirements other than the undersized lot size.

Under the zoning ordinance in effect in August of 1997, the minimum lot size in the Rural zoning district was five acres, and the density for non-PUD residential development required five acres of land per dwelling unit. § 4.2(D), 1997 Zoning Bylaws. Thus, at least as of August of 1997, both lots were preexisting, developed lots, nonconforming at least as to lot size and density. The required front yard setback was 100 feet, making at least the location of the north lot mobile home nonconforming as to the front setback.

The state statute in effect in August of 1997, codified at 24 V.S.A. § 4406(1) (1997), provided as to preexisting undersized lots that:

Any lot in individual and separate and non-affiliated ownership from

3

> surrounding properties in existence on the effective date of any zoning regulation . . . may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements . . . .

The state statute at that time did not automatically trigger merger, if two substandard lots came into common ownership, absent language in the particular zoning ordinance requiring such merger. Appeal of Weeks, 167 Vt. 551, 557 (1998).

Section 5.7(A) of the 1997 Zoning Bylaws, adopted on March 4, 1997, provided with regard to merger that:

> When an owner owns a lot which fails to meet minimum lot size requirements and such lot is contiguous to another lot owned by the same lot owner, such contiguous lots shall constitute a single lot, except that:
>
> 1.  Contiguous lots which as of June 20, 1966 were devoted to separate and independent uses shall constitute separate lots so long as such lots continue to be devoted to separate and independent uses; or
>
> 2.  Contiguous lots which are devoted to uses approved as separate uses under the [Zoning Bylaws] shall constitute separate lots provided such uses are conducted in compliance with the terms and conditions of the approvals granted; . . . .

The two lots first came under common ownership in August of 1997, with the purchase of the second lot by the Marshalls (predecessors of Appellant's immediate predecessor, George Reynolds). In the same time period, the Marshalls and their northerly neighbors entered into an "Easement and Water Rights Agreement" that clarified the water rights referenced in the 1970 deed.

At that time, the lots were each developed with a mobile home and associated infrastructure, and at least the mobile home on the north lot was approved as a separate use, so that under § 5.7(A)(2) of the 1997 Zoning Bylaws the two nonconforming undersized lots did not merge (assuming that the mobile home installed on the south lot had also received a permit or predated the adoption of zoning in Charlotte).

4

In 1998, 24 V.S.A. § 4406(1) was amended to require merger when undersized contiguous lots come under common ownership, unless four statutory criteria were met. 24 V.S.A. § 4406 (2003). As then amended, § 4406(1)(A) provided that:

(A) If such [existing undersized] lot subsequently comes under common ownership with one or more contiguous lots, the lot shall be deemed merged with the contiguous lot for purposes of this chapter. However, such lot shall not be deemed merged and may be separately conveyed, if:
(i) the lots are conveyed in their preexisting, nonconforming configuration; and
(ii) on the effective date of any zoning regulations, each lot had been developed with a water supply and wastewater disposal system; and
(iii) at the time of transfer, each water supply and wastewater system is functioning in an acceptable manner; and
(iv) the deeds of conveyance create appropriate easements on both lots for replacement of one or more wastewater systems in case a wastewater system fails . . . .

24 V.S.A. § 4406(1)(A) (2003).

Appellants' predecessor George Reynolds purchased the north lot in September of 1998. Because the north and the south lots did not merge under the 1997 Zoning Bylaws during the Marshalls' ownership, the 1998 transfer of the north lot as a separate lot was not prohibited.

Mr. Reynolds purchased the south lot on March 28, 2001. At that time, both lots still contained mobile homes served by functioning waste water and water supply systems. Before December 21, 2001, Mr. Reynolds had removed the mobile home and all sheds from the south lot.

The 2002 Zoning Bylaws have not been provided to the Court. Section 6.6(B)(3) of the 2002 Zoning Bylaws was referred to in the ZBA decision's analysis of whether the nonconforming use[2] of the south lot had been discontinued or abandoned. As quoted in

---

[2] The comparable provision in the 2006 Land Use Regulations is found in § 3.8(A)(3). However, the south lot mobile home may have also been a nonconforming structure, if it

5

the ZBA decision, § 6.6(B)(3) states that any non-conforming use of a structure or parcel of land may be continued indefinitely, but:

> shall not be reestablished if such use has been discontinued for a period of six months, or has [] been changed to, or replaced by[,] a conforming use. Intent to resume a non-conforming use shall not confer the right to do so.

It is undisputed that Mr. Reynolds did not reestablish a residential use or a residential structure on the south lot; in fact, no separate structure or use was sought to be established on the south lot until Appellant's 2007 permit application that is the subject of the present appeal.

Instead, in November of 2003, Mr. Reynolds applied for and was issued a zoning permit to construct an addition to the mobile home remaining in the original location on the north lot. The plot plan attached to that application has not been provided to the Court. The approved application referred to the parcel size as 3.01 acres, that is, the combined size of the north and south lots. No party appealed the Zoning Administrator's grant of that application; it became final, and cannot be challenged, either directly or indirectly. 24 V.S.A. § 4472(d).

In February of 2005, after the addition had been constructed, Mr. Reynolds applied for and was issued a Certificate of Compliance for the addition, which also stated the lot size to be 3.01 acres. No party appealed the Zoning Administrator's grant of that Certificate of Compliance and it became final.

---

failed to comply with the setback requirements. The Court cannot determine from the portions of the 2002 Zoning Bylaws quoted in the decision whether § 6.6(B) of the 2002 Zoning Bylaws also contained an analogous provision to § 3.8(B)(2) of the 2006 Land Use Regulations regarding noncomplying structures, which allows modification of such structures that will increase their degree of noncompliance only if approved by the ZBA as a conditional use. § 3.8(B)(2).

6

The state statute was again amended in 2004 to allow (but not require) municipal bylaws to provide for merger if an existing small lot subsequently comes under common ownership with one or more contiguous lots, and also to allow municipal bylaws to be less restrictive of the development of existing small lots than was the state statute. 24 V.S.A. § 4412(2)(B),(C). Section 4412(2)(B) preserved the exemption that "a nonconforming lot shall not be deemed merged and may be separately conveyed" if all of the following four criteria are met:

(i) The lots are conveyed in their preexisting, nonconforming configuration.
(ii) On the effective date of any bylaw, each lot was developed with a water supply and wastewater disposal system.
(iii) At the time of transfer, each water supply and wastewater system is functioning in an acceptable manner.
(iv) The deeds of conveyance create appropriate easements on both lots for replacement of one or more wastewater systems, potable water systems, or both, in case there is a failed system or [a] failed supply as defined in 10 V.S.A. chapter 64.

Appellant acquired the three acres of property in a single deed from Mr. Reynolds on March 3, 2005, and quit-claimed the property in a single deed to himself and Melinda Kirschner shortly thereafter. The deed from Reynolds described the property as having been acquired by Mr. Reynolds in two deeds, one for the former one-acre north lot, referred to in the deed as "Parcel One" and one for the former two-acre south lot, referred to in the deed as "Parcel Two."

In August of 2005 Appellant's engineering consultant provided an evaluation of the technical feasibility of constructing a single-family dwelling on the eastern portion of the combined property, across the small stream. The evaluation concluded that the eastern portion of the combined property did not contain a viable location to site a house, considering cost, permitting constraints, and potential environmental impact, and recommended siting a house on the area of the property closer to the road.

7

In late September of 2005, Appellant submitted a zoning application, stating the acreage of the parcel as 3.01 acres. The application stated the proposed improvements as: "I would like to replace trailer with home on plan – moving new home an additional 20 ft. back from road edge." The accompanying plan also has not been provided to the Court.

The Zoning Administrator denied the application, stating that a variance was required; the accompanying letter explained that the proposal failed to meet the 100-foot front yard setback.[3] No appeal was taken from this determination.

In January of 2006 Appellant submitted a new zoning permit application that described the project as a "[r]elocation of house-site to meet setbacks," referring to an attached engineer's site plan that also has not been provided to the Court. While the Zoning Administrator initially also denied this application, stating on the form that the "[a]pplication fails to meet regulation of proposed new bylaw," the Zoning Administrator later approved it, "upon revision," on April 25, 2006, apparently due to the fact that 2006 Land Use Regulations had reduced the front yard setback requirement to fifty feet. Also in April of 2006, a town sewage permit was issued (under a different municipal ordinance ) for a new mound sewage system to serve the new house, stating the parcel size as three acres.

In January of 2007, Appellant applied for and received a zoning permit to "rebuild the existing garage w[ith]out increasing the [square footage]." The application stated the parcel size as 3 acres. The application offered to move the garage "slightly to the southeast" to make the structure less nonconforming. The Zoning Administrator's approval of this application was not appealed, and became final.

---

3 If the original mobile home on the north lot had a setback of 85 feet, and this one was proposed to be 20 feet farther from the road, it is not clear to the Court why this proposal would not have met the 100-foot front setback.

Apparently the house and garage were completed, as a certificate of occupancy was granted by the Zoning Administrator for the property on February 8, 2007. It was not appealed and became final.

In May of 2007, Appellant submitted a new application for a zoning permit to construct an additional single-family residence on what had been the south lot; it is this application that is the subject of the present appeal. Neither this application nor its characterization of the lot size or location has been provided to the Court. Without the application, the Court cannot determine whether Appellant requested a subdivision permit at this time, whether Appellant claimed in this application that the north and south lots had remained separate all along, or whether Appellant sought to construct this additional residential unit under the amended provisions now codified in 24 V.S.A. § 4412(1)(E) regarding accessory dwelling units.

Appellant's engineer designed a separate new mound-type wastewater disposal system for each lot, to function as the primary system for that lot. Each system is designed to be large enough to be used by both lots concurrently, in case of a failure of one of the systems, provided that a pre-treatment system is installed on the remaining system. The engineer's affidavit states that there is no physical barrier to the installation of such a pre-treatment system on either lot. The wastewater system currently operating on the north lot is installed and functioning properly.

Appellant proposes that the new mound system for the south lot will be installed and functioning properly prior to any sale of either lot, and that the deeds will contain easements benefiting and burdening both lots for the common usage of each lot's water supply and wastewater disposal system, in case the system on the other lot fails in the future. Appellant proposes that the configuration of the north and the south lots would conform to the former boundaries of those lots when they were in separate ownership.

The Zoning Administrator denied the 2007 application, as did the ZBA on appeal;

9

Appellant appealed to this Court the ZBA's decision upholding the Zoning Administrator's denial of this application.

As both parties have moved for summary judgment, the Court considers each motion in turn and affords the party opposing the motion under consideration the benefit of all reasonable doubts and inferences. DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609, 611 (mem.); In re Morris 7-Lot Subdivision, Docket No. 71-4-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Nov. 26, 2007). The Court applies the substantive standards that were applicable before the ZBA . V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h).

The parties have conflated two distinct issues in this appeal. They focus on whether two contiguous existing small lots merged by operation of law at any time in the history of this property. However, the distinctly separate question raised by Question 4 of the Statement of Questions is whether or when the noncomplying building or use that was removed from the south lot could be replaced or reinstated, regardless of whether the lots had or had not merged. The Court must analyze these two issues separately under the statutes and the zoning ordinance.

## Question 6

Question 6 asks this Court to determine, assuming that the two lots may be separately conveyed, whether the north lot has an easement by prescription to take water from the well located on the south lot. Any questions of easements, water rights, or other property rights are beyond the jurisdiction of this Court. 4 V.S.A. § 1001(b); see, e.g., Appeal of Monty, Docket Nos. 7-1-04 Vtec and 47-3-04 Vtec, slip op. at 6-7 (Vt. Envtl. Ct. Jan. 24, 2006) and cases cited therein. Accordingly, Question 6 of the Statement of Questions must be DISMISSED.

## Question 3

Question 3 asks whether the 2002 or the 2006 zoning ordinance applies to this application. The application before the Court, to construct a single family residence on the south lot, was filed on May 18, 2007. Summary judgment may therefore be entered that the 2006 Land Use Regulations apply to the application. Appellant has not suggested any reason why any earlier ordinance should be applicable to this application, although he does argue that earlier ordinances should be considered with respect to merger.

Of course, any analysis of the status of the property at any earlier date, such as in 1966 when the Town first adopted zoning, or in 1997 or 2001 when the north and south lots came into common ownership, must be analyzed according to the statutes and regulations in effect at the time of the relevant event. See generally 1 V.S.A. §§ 213, 214(b); cf. Sanz v. Douglas Collins Constr., 2006 VT 102, ¶ 14, 180 Vt. 619, 623 (mem.); Myott v. Myott, 149 Vt. 573, 575–76 (1988).

Question 4

The residential use of the south lot as either a separate nonconforming lot or as a second residential use on a merged nonconforming lot was discontinued at some time between March 28 and December 21 of 2001. It was not reestablished at any time after the removal of the residence on the south lot. The parties have not provided information as to whether the location of the mobile home on the south lot was nonconforming as to setbacks, or as to whether the then-effective zoning ordinance contained a provision analogous to § 3.6(A) allowing only one principal use or structure on a single lot.

As a dwelling unit in that location on the south lot was not reestablished, it could be precluded from being reestablished, depending on the provisions in the relevant zoning ordinance analogous to § 3.8(A)(3) or to § 3.8(B)(3). The parties have not established when the demolition occurred, from which to measure the six-month period for § 3.8(A)(3) or the one-year period for § 3.8(B)(3), and from which to determine which zoning ordinance was

11

applicable to the issue.

Therefore, although material facts may not be disputed, they have not so far been provided to the Court, so that summary judgment cannot now be granted as to Question 4. At the conference scheduled in connection with this case (see enclosed notice) please be prepared to discuss whether this issue is moot or whether the parties wish to brief it further.

Questions 1, 2, and 5

Questions 1, 2 and 5 ask the Court to determine whether the north and the south lot remain as separate lots as of the date of the 2007 application, and, if not, whether the language of 24 V.S.A. § 4406, as it existed between 2001 and 2003, allows the south lot to be separately developed. Although not presented in the Statement of Questions, Appellant also argues that the state statute as amended in 2004 (recodified at 24 V.S.A. § 4412(2)) now should be interpreted to allow the separate conveyance of the south lot, even if the two lots had merged under the language in effect in 2001.

The existing-small-lot statute is a type of grandfathering provision intended to allow a particular kind of nonconformity — an undersized lot — to continue in existence and to be developed in its configuration as of the date of adoption of the bylaw that rendered its lot size nonconforming. It only exempts existing small lots from having to meet the minimum lot size (and frontage and lot depth) requirements; it does not exempt such lots from the other applicable dimensional requirements of the zoning ordinance, such as setback requirements. In re Appeal of Jenness and Berrie, 2008 VT 117, ¶¶ 23–24.

The existing-small-lot statute does not require a landowner who owns contiguous existing small lots to keep them separate, it simply allows such a landowner to develop the lots separately, or to retain them in separate configuration, under certain circumstances. Appellant has focused his argument on the circumstances under which a landowner is

12

allowed to keep contiguous undersized lots in separate configuration.

Finality – 24 V.S.A. § 4472(d)

However, in the present case, from March of 2001 until Appellant's purchase in March of 2005, Appellant's predecessor chose to take action to merge the two contiguous undersized lots. He removed or demolished all the residential and accessory buildings on the former south lot.  He proceeded to obtain a zoning permit for additions to the remaining existing residence in November of 2003, and a certificate of compliance in February of 2005, both of which referred to the property as being the combined three acres in size.  As that zoning permit and certificate of compliance became final without appeal, Appellant's predecessor became bound by them, including their description of the property in its merged, three-acre configuration, and was precluded by 24 V.S.A. §4472(d) from contesting them, either directly or indirectly.

Thus, even without regard to the permits Appellant himself obtained for the property in its three-acre configuration, Appellant is similarly bound, based on the actions of his predecessor.  See  Badger v. Town of Ferrisburgh, 168 Vt. 37, 42–43 (1998) ; In re Gregoire, 170 Vt. 556, 560 (1999) (mem.) (subsequent purchasers bound by previous landowners' abandonment of nonconforming use status).

Moreover, Appellant himself applied for a permit in September of 2005, and applied for and received a permit in January of 2007, describing the property as being three acres in area.  (The parties have not provided the attachments to another permit application from January of 2006, granted in April of 2006, from which the Court could determine whether the acreage was also represented as three acres on that permit.)  Appellant did not appeal the Zoning Administrator's issuance of the January 2007 permit, including its description of the property in its merged, three-acre configuration, and is therefore precluded by 24 V.S.A. §4472(d) from contesting the three-acre combined lot size, either directly or indirectly.  The parties have not provided the attachments to the April 2006 permit or the

February 2007 certificate of occupancy, from which the Court could determine if they similarly approved plans showing the property as three acres in size, in which case they would have a preclusive effect for the same reason.

Merger

When the lots first came into common ownership in 1997 they did not merge, either by operation of the zoning ordinance or state statute. Under § 5.7(A)(1) of the 1997 Zoning Bylaws, they had been separate lots as of the date of the first adoption of zoning in 1966, and they remained "devoted to separate and independent uses." See also Appeal of Weeks, 167 Vt. 551, 557 (1998).

The recognized canons of statutory construction are applicable to zoning ordinances as well as to statutory construction. In re: Kim Wong Notices of Violation, Docket Nos. 169-7-06 Vtec and 293-12-06 Vtec, slip op. at 2 (Vt. Envtl. Ct., Mar. 12, 2007). In either instance the court must give "effect to the whole and every part of the ordinance," In re Stowe Club Highlands, 164 Vt. 272, 279–80 (1995) (citation omitted), to "avoid rendering one part mere surplusage," In re Appeal of Jenness and Berrie, 2008 VT 117, ¶ 24, and so that the construction does not produce an absurd result. Wesco, Inc. v. Sorrell, 2004 VT 102, ¶14, 177 Vt. 287, 293.

At the latest, by 2003 the two lots had merged by the voluntary actions of Appellant's predecessor in removing the residential uses on the former south lot and obtaining a zoning permit for the property as a three-acre parcel. To interpret any existing-small-lot statute to require such parcels to remain separate, despite the contrary intention of the landowner at the time, would create an impermissible absurd result, see Wesco, 2004 VT 102, ¶14, especially as zoning statutes and ordinances are to be construed by resolving any ambiguity in favor of the landowner. Weeks, 167 Vt. at 555–56; see In re Jenness and Berrie, 2008 VT 117, ¶ 29.

Even if Appellant's predecessor had not applied for the zoning permit for a three-

14

acre parcel, after he had removed the residential uses from the south lot, under § 5.7(A) and § 6.6(B)(3) of the 2002 Zoning Bylaws the two lots merged, as the south lot was no longer devoted to a separate and independent use.

Appellant seems to argue that the reference in the state statute precluding merger, if the wastewater systems in the lot are functioning in an acceptable manner at the time of transfer, allows a new wastewater system to be constructed years after merger may have occurred, and allows the former lots to be resubdivided into their former configuration. Former 24 V.S.A. § 4406(1)(A)(iii), recodified in substantially the same form at 24 V.S.A. § 4412(2)(B)(iii).

However, the existing-small-lot protections in the statute are fundamentally a protection for a specific type of nonconformity. One purpose of zoning is to phase out nonconformities. In re Smith, 2006 VT 33, ¶ 10, 179 Vt. 636, 639 (mem.); In re Appeal of Huntington NOV, Docket Nos. 204-8-06 Vtec and 209-9-06 Vtec, slip op. at 5 (Vt. Envtl. Ct., Apr. 25, 2007; In re Richards, 174 Vt. 416, 419–20 (2002). "Once merged, the property may not be developed in a manner that would recreate the nonconforming use." In re Richards, 178 Vt. 478, 480–81 (2005) (citation omitted).

On the issue of merger, summary judgment must therefore be granted to the Town on Questions 1, 2, and 5 of the Statement of Questions, in that the former north and south lots merged at least as of the November 2003 Reynolds permit, and also that Appellant is precluded by 24 V.S.A. § 4472(d) from contesting, even indirectly, that the property is a single 3.01-acre lot.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Question 6 of the Statement of Questions is DISMISSED; and Summary Judgment is GRANTED to the Town, and DENIED to Appellant, on Questions 1, 2, 3, and 5 of the Statement of Questions, as discussed above. This decision concludes all but Question 4 of

15

the Statement of Questions.

A telephone conference has been scheduled (see enclosed notice) to determine whether the parties wish to proceed on Question 4 or whether it is moot. If the parties agree in advance of that conference that it is not necessary to proceed with Question 4, they may so state in writing, in which case they shall provide the Court with a proposed Judgment Order, agreed as to form, to conclude this case.

Done at Berlin, Vermont, this 25th day of September, 2008.

_____
Merideth Wright
Environmental Judge

16