**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |
|---|---|
| In re Mastelli Construction Application } } } } | Docket No. 220-10-07 Vtec (municipal zoning appeal) |

## Decision on Renewed Summary Judgment Motions

By the pending motions, we are asked to revisit the legal question of whether a 1.2± acre portion of Appellant Richard Mastelli's East Montpelier land should be regarded as a separate—albeit undersized—lot that may be developed in conformance with the Town of East Montpelier Zoning Regulations ("Regulations"), applicable state statutes, and case law. For the reasons more specifically expressed below, we conclude, based upon the factual record that the parties have placed before us, that even when viewed in a light most favorable to Mr. Mastelli (hereinafter referred to as "Appellant" or "Applicant"), the controlling law requires us to view Appellant's entire 12.2± acre parcel as one lot and that the 1.2± acre portion cannot be regarded as a separate lot nor be separately developed.

This Court has previously addressed the legal questions posed by Appellant in this appeal. By its Decision on Multiple Pending Motions, filed September 19, 2008 ("Decision"), this Court entered summary judgment on Appellant's Question 3 in favor of the Town of East Montpelier ("Town"), concluding that the Town is not equitably estopped from contesting the legal status of Appellant's 1.2± acres as a separate lot. The Court also concluded that there were insufficient material facts to warrant an entry of summary judgment for either party on Appellant's Questions 1 and 2, which together ask this Court whether Applicant's 1.2± acres constitute a separate lot that deserves a permit for development. In an Entry Order dated November 14, 2008 ("Entry Order"), this Court denied Applicant's request to reconsider and reverse its Decision.

The parties have worked cooperatively to present the Court with deeds, a prior subdivision determination, and other material evidence, all of which has provided a more complete factual presentation for which the Court is grateful. Based upon this updated presentation of undisputed material facts, both Applicant and the Town have renewed their motions for summary judgment on whether Applicant's 1.2± acres constitute a separate lot.

1

## Supplemental Factual Background

Much of the procedural and factual background that the Court recited in its September Decision and November Entry Order remains uncontroverted. We therefore incorporate those procedural and factual representations by reference. Based upon the parties' additional filings, and for the sole purpose of putting the pending motions into context, we note the following supplemental material facts, all of which we understand to be undisputed:

1. Zoning was first enacted in the Town in 1970. Prior to that time, Applicant's property was part of a 66± acre parcel owned by Mr. and Mrs. Hull. A 5± acre portion of this parcel was on the west side of Horn of the Moon Road ("Road"); the remaining 61± acre portion was on the east side of the Road.

2. The Road was then—and still is—well traveled and maintained by the Town. The Town has not disputed that when zoning was first enacted in 1970, the Road bisected the property then owned by the Hulls and rendered the 5± acre portion on the west side of the Road a separate lot.

3. At no time prior to the enactment of zoning in 1970 was the 1.2± acre portion of Applicant's parcel held or regarded as a separate lot.

4. Under the 1970 zoning regulations, Applicant's property was a portion of a wood lot and pasture. (See Deed from Lane to Hull (Feb. 23, 1960), a copy of which the parties jointly filed as Exhibit A.) Pursuant to the 1970 regulations, the subject property was located in a zoning district that required lots to be at least 1 acre in size

5. In 1974, the Town amended its zoning regulations, including a revision that then required lots to contain a minimum of 7 acres. To the extent that the 5± acre portion of the Hull property on the west side of the Road was regarded as a separate lot (and there has been no evidence presented that contradicts this assertion), the 1974 zoning amendments rendered this 5± acre parcel a pre-existing lot, made non-conforming as to size.

6. We have not been made aware of any further revisions to the Town Zoning Regulations that would have a material impact upon Applicant's pending construction application.

7. The most recent subdivision application made in connection with property that included the land Appellant now owns occurred in 1989, when a Mr. and Mrs. Walker owned the property at issue and sought to subdivide their 50± acres into two parcels, one containing 11± acres located entirely on the east side of the Road, and a second parcel containing a total of 39± acres. The proposed 39± acre parcel included 35± acres on the east side of the Road, and 4± acres on

2

the west side of the Road, which the Walkers understood at that time to be all of the land they owned on the west side of the Road.  (See Joint Ex. I.)  An arrow running between the 35± acre portion and the 4± acre portion is accompanied by the handwritten notation "includes this," which we understand to represent the Walkers' intent that this combined acreage be held as one lot.  (Id. at 3.)

8.      On the front page of the application form that the Walkers completed in connection with their first subdivision request, the Walkers represented that they intended only to create these two lots; a handwritten notation explaining the planned development stated "Divide 50 acre parcel into 1 [i.e.: one] 11 acre parcel and 1 [i.e.: one] 39 acre parcel."  (Id. at 1.)

9.      As depicted on the hand-drawn site map attached to their application, the Walkers' subdivision proposal did not depict Applicant's 1.2± acres as a separate lot.  (See id. at 3.)

10.     The then Zoning Administrator returned the Walkers' 1989 subdivision application with a hand-written note explaining that their proposed subdivision did not conform to the minimum road frontage requirement of 350 feet.  (Id. at 4.)

11.     The Walkers then resubmitted their subdivision application after obtaining a site map prepared by a licensed surveyor.  (See Joint Ex. K.)  The Walkers continued to characterize their request as a two-lot subdivision with one lot containing 36± acres and another lot containing 12± acres.  (Id. at 1.)[1]  From the attached site map, it appears that this latter lot is the property that Applicant eventually acquired.  (Id. at 4.)

12.     It is unclear from the evidence before us how the Walkers specifically responded to the road frontage deficiency highlighted by the Zoning Administrator.  However, the parties here have unearthed several handwritten notes that provide some insight.

13.     Joint Exhibit K includes a handwritten note, apparently made by the Walkers' professional engineer, describing certain changes that the Walkers wished to make to their subdivision site plan.  (Id. at 3.)  This note included the representation that "Customer now wants 1 acre for protection on west side of road."  (Id.)

14.     The revised site map that accompanied the Walkers' revised subdivision application depicts two parcels: a 36± acre parcel that was to be retained by the Walkers (including land on

---

[1]   The front page of the Walkers' revised subdivision application contained a similar description for their development:  "Divide 48 acre parcel into 1 [i.e.: one] 12+ acre parcel and 1 [i.e.: one] 36 acre parcel."  (See Joint Ex. K at 1.)

both sides of the Road), and a 12.2± acre parcel consisting of 11± acres on the east side of the Road and 1.2± acres on the west side of the Road.

15.     The second handwritten note unearthed by the parties appears to be a communication concerning the Walkers' revised subdivision plan. Its author noted the following: "Discussed with Planning Commission. See no problem with additional 1 acre on west side of road. OK if map added and marked for the 1 acre. He can do. 12/11/89—discussed with Walker & McCarthy—will have p.e. do up new layout." (Id. at 4.) We understand that the reference to "p.e." is to the professional engineer retained by the Walkers.

16.     There has been no other evidence of changes made to the Walkers' two lot subdivision plan to address the road frontage deficiency that led the Zoning Administrator to reject their first application. However, after the engineer completed the revisions to the two-lot subdivision site plan depicting the 1.2± acres as included in the second lot, the Zoning Administrator approved the Walkers' revised two-lot subdivision application. (Id. at 2.)

17.     We regard as an undisputed fact that the Zoning Administrator approved the Walkers' two-lot subdivision in reliance upon the Walkers' revised application (Joint Exhibit K), the handwritten notes contained in Joint Exhibits I, J, and K, and the engineer's notation on the revised site map (Exhibit K at 5) showing an arrow traversing the Road and connecting the 11± acres on the east side of the Road with the 1.2± acres on the west side of the Road.

18.     The Walkers thereafter sold the 12.2± acre parcel, including land on both sides of the Road, to Applicant's predecessors in title. (See Deed from Walker to Moskowitz & Heller (Dec. 20, 1989), a copy of which has been submitted as Joint Exhibit E.)

19.     The Exhibit E Deed included a notification, commonly known as a deferral of permit, that the portion of the property on the west side of the Road (i.e., the 1.2± acre portion of the second lot that the Town Zoning Administrator approved for subdivision just days earlier) required a state subdivision permit under the then-existing state subdivision regulations. As the name implies, a deferral of permit notification within a transfer deed memorializes that a state permit has not been issued. We have not been presented with any facts or legal authority by either party here that the presence or absence of a state subdivision permit negates a subdivider's obligation to obtain direct or implied municipal subdivision approval.

4

**Discussion**

We remain sympathetic to Applicant due to the predicament he now faces of having observed his neighbor benefitting from the sale and development of an undersized lot, while he has been frustrated in his efforts to do the same. Applicant again makes detailed representations and references to the zoning determinations allowing an abutting 3.8± acre undersized lot to be developed, even though it appears to be that same portion of the land the Walkers represented would be held as one lot with land on the east side of the Road. Although we sympathize with Applicant on this point, our jurisdiction is limited to addressing the legality of Applicant's assertion that his 1.2± acres should be regarded as a lawful, undersized lot that is permitted to be developed under 24 V.S.A. § 4412(2) and Regulations article III, § 2; we have no authority in this proceeding to adjudicate the legality of Applicant's neighbor's prior subdivision and development determinations.

The Vermont legislature has authorized municipalities to recognize lots that do not conform to minimum lot sizes. See 24 V.S.A. § 4412(2); see also the predecessor statute, 24 V.S.A. § 4406(1), referred to in Regulations art. III, § 2. As we noted in our prior Decision, the Town Regulations conform to these statutory provisions by recognizing an exception for lots that do not meet the minimum lot size, width, and depth requirements:

> Any lot in individual and separate and non-affiliated ownership from surrounding properties in existence on the effective date of these Regulations may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less than one-eighth acre in area with a minimum width or depth dimension of forty feet.

Regulations art. III, § 2.

Our Supreme Court has held that under this type of exception, "existing small lots are effectively grandfathered as nonconforming uses as to area." In re Weeks, 167 Vt. 551, 555 (1998). Although these lots do not meet the minimum lot size requirement, exempted parcels still "retain their development rights." Id. As recently as five months ago, the Supreme Court reasserted the plain meaning interpretation of 24 V.S.A. § 4412(2) that a lawful "[pre-] existing small lot is '[a]ny lot in individual and separate and non-affiliated ownership from surrounding properties <u>in existence on the effective date of any zoning regulation</u>.'" In re Jenness & Berrie, 2008 VT 117, ¶ 10 (second alteration in original) (emphasis added) (quoting 24 V.S.A. § 4406).

Our initial analysis begins with the language emphasized above from Jenness & Berrie: a lot may only enjoy the applicable exception from the zoning regulations if it existed on the date that zoning became effective. Id. Applicant has provided a thorough analysis of when a town roadway may effectuate a natural subdivision not specifically authorized by a municipal permit. But we do not see that precedent as applicable to the facts in this case.

Two undisputed material facts prove fatal to Applicant's desire to develop the 1.2± acre portion of his property. First, there has been no evidence presented that this portion of his land was ever separately held or otherwise existed as an independent lot when the Town enacted its Zoning Regulations. This prerequisite is not a mere legal technicality; it represents the legal foundation for the very zoning exception at issue in this case. For, while zoning regulations and their enabling statutes have consistently been interpreted as respecting pre-existing property rights, an important and established goal of zoning is to encourage conformance and "to phase out nonconforming uses, including undersize[d] lots." In re Richards, 2005 VT 23, ¶ 6, 178 Vt. 478 (mem.); accord Drumheller v. Shelburne Zoning Bd. of Adj., 155 Vt. 524, 529 (1990). Therefore, for Applicant to succeed in obtaining authority to develop the 1.2± acre portion of his property, he must show that this portion of his land was specifically held as a separate lot. None of the evidence presented, including the evidence the parties recently filed and stipulated to as undisputed, provides any such suggestion. In fact, all the uncontested material evidence presented shows that, at least up until zoning was enacted in 1970, the 1.2± acre portion of Applicant's property was held as part of a much larger parcel, whether it be merely the 5± acre parcel on the west side of Horn of the Moon Road or the Hulls' entire 66± acre pasture and wood lot.

Applicant appears to argue that the Walker subdivision in 1989 provides a foundation for his assertion that the 1.2± acre portion of his property was then designated as a separate parcel, particularly because it was separated from the other lands lying to the east of the Road. In fact, the circumstances surrounding the Walker subdivision provide the second fatal blow to Applicant's legal theory. The Walkers' first attempt to subdivide their property was rejected by the Zoning Administrator as not conforming to the Regulations' provisions establishing minimum road frontage. The Walkers then revised their subdivision application and site plan. While we have been unable to discern from the record before us how the Walkers specifically responded to the application deficiencies pointed out by the Zoning Administrator, the record

6

appears clear on two important points: (1) the Walker site plan was revised to include the 1.2± acre portion of Applicant's property as part of one of the two lots proposed for development; and (2) in reliance upon the revisions the Walkers made to their two-lot subdivision, the Zoning Administrator reversed his first determination and approved their application.

To adopt Applicant's legal argument requires us to ignore the prior Zoning Administrator's determination and his reliance upon the site plan revisions and the Walkers' representation that the land would be held as two separate lots. We decline to do so. We also decline Applicant's request that we evaluate whether the 1989 subdivision was made in error.

Our Supreme Court has repeatedly stated the importance of respecting the finality of land use determinations. See, e.g., In re Hildebrand, 2007 VT 5, ¶11, 181 Vt. 568 (mem.) (citing In re Dep't of Bldgs. & Gen. Servs., 2003 VT 92, ¶ 21, 176 Vt. 41); see also 24 V.S.A. § 4472(d). The respect and finality that must be afforded to prior land use determinations also binds future owners of the property, as the successors or assigns from the party that made the original representations. Hildebrand, 2007 VT 5, ¶11.

The Hildebrand appeal concerned a request by the current property owners to amend or remove restrictions and conditions placed upon their property that were relied upon by the Waitsfield Planning Commission when it previously approved a subdivision application submitted by a prior owner to the property. The application now before us is somewhat different than Hildebrand, since Applicant here has not submitted a subdivision amendment application. Rather, Applicant here requests that this Court recognize a lot created by the division caused by a Town-maintained road, thereby negating the need for Applicant to obtain a subdivision permit. But to do so requires this Court to ignore the representations made by the prior owner that Applicant's entire 12.2± acres would be held as one lot, and to ignore the prior Zoning Administrator's reliance upon this representation when he reversed his first determination and thereafter concluded that the revised two-lot subdivision application conformed to the applicable zoning provisions.

In summary, based upon the factual record that the parties have placed before us, viewed in a light most favorable to Applicant, we conclude that the controlling law requires us to view Applicant's entire 12.2± acre parcel as one lot and that the 1.2± acre portion cannot be regarded as a separate lot nor be separately developed. The undisputed facts reveal that there is no legal foundation for asserting that the 1.2± acre portion of Applicant's property was ever lawfully

7

recognized as a separate lot and that there is no legal or factual foundation for so recognizing it now. This reality forces us to conclude that there is no legal foundation for approving Applicant's construction application under the relevant use, lot size, and road frontage restrictions in Regulations article IV, § 5.

### Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** that the material facts in this case, even when viewed in a light most favorable to Applicant, require us to conclude as a matter of law that the 1.2± acre portion of his property to the west of Horn of the Moon Road did not exist as a separate lot prior to the enactment of zoning and may not now be recognized as a separate lot, after the enactment of zoning—even though the Road separates it from Applicant's remaining land—due to the prior subdivision determination and the representations upon which that determination was based. Because the 1.2± acre portion of Applicant's property cannot be recognized as a lawfully existing, undersized lot, we conclude as a matter of law that his construction application must be **DENIED**. We therefore enter summary judgment denying Applicant's application.

A Judgment Order accompanies this Decision. The merits hearing previously scheduled to begin Tuesday, March 10, 2009, is hereby **CANCELLED**. The final pre-trial conference previously scheduled for Monday, March 2, 2009, is also hereby **CANCELLED**. This concludes the proceedings before this Court in this appeal.

Dated at Newfane, Vermont this 5th day of February 2009.

_____
Thomas S. Durkin, Environmental Judge

8