STATE OF VERMONT

ENVIRONMENTAL COURT

|                                                    |     |                              |
|----------------------------------------------------|-----|------------------------------|
|                                                    | }   |                              |
| In re: Anne C. Rose Revocable Trust Building Permit | }   | Docket No. 290-12-07 Vtec    |
| (Appeal of Blood, et al.)                          | }   |                              |
|                                                    | }   |                              |

<u>Decision and Order on Cross-Motions for Summary Judgment</u>

The following group of twenty-four individuals: Stuart Blood, Lilian Shen, Michael S. Zens, Christina M. Robinson, Sally Duston Whitlock, Dean Whitlock, Ben Bradley, Nicolette Corrao, Barbara J. DeFelice, Christopher G. Levey, Ehrhard Frost, Brenda Courtemanche, Robert J. Pulaski, Cyrus Severance, Linda Matteson, James W. Masland, Mary Daly, Frank J. Barrett, Jr., Roberta Traub, Carol Penland, Bob Milanese, Fran Peront, Richard Hodge, and Adair Mulligan (Appellant Group), appealed from a December 1, 2007 decision of the Zoning Board of Adjustment (ZBA) of the Town of Thetford which upheld the Zoning Administrator's issuance of a zoning permit[1] to Appellee-Applicant the Anne C. Rose Revocable Trust. As ruled by this Court in its July 24, 2008 decision relating to party status, Appellant Group has party status under 24 V.S.A. § 4465(b)(4).

Appellant Group is represented by Paul S. Gillies, Esq. and Charles L. Merriman, Esq.; Appellee-Applicant is represented by C. Daniel Hershenson, Esq.; Interested Parties Jake Guest and Elizabeth Guest have entered their appearance and represent themselves; the Town of Thetford has also entered its appearance on its own behalf and is participating in this appeal through Michael J. Brown, the Chair of the Selectboard.

---

[1] Although the parties refer to it as a "building" permit, both the application form and the Zoning Ordinance refer to it as a "zoning" permit; this decision also will use the term "zoning" permit.

1

After resolving motions to dismiss in a decision issued on July 24, 2008, the Court allowed parties to submit additional issues by summary judgment. Appellee-Applicant and Appellant Group have moved for summary judgment on both questions in Appellant Group's Statement of Questions: (1) "[w]hether the [zoning] permit is inconsistent with condition 14(k) of the conditional use [approval] issued February 28, 2006, with respect to the distance between the septic system and the Connecticut River;" and (2) "[w]hether the [zoning] permit is inconsistent with conditions [14](i) and (j) of the conditional use [approval] relating to the design of water supply systems and septic systems to minimize or prevent the infiltration of flood waters into the water system[,] septic systems and discharges into flood waters." The following facts are undisputed unless otherwise noted; portions of this section are repeated from the Court's July 24, 2008 decision to the extent necessary.

Appellee-Applicant applied to construct a single-family residence on a 10.1-acre parcel of land on Ely Road adjacent to the Connecticut River, in the Rural Residential zoning district and in a Flood Hazard Area overlay district. The application was referred to the ZBA for conditional use approval. The ZBA held hearings on September 13, 2005, October 11, 2005, and December 13, 2005, and issued its conditional use approval decision on February 28, 2006. As discussed in this Court's July 24, 2008 decision, the ZBA's conditional use approval decision became final without appeal. Appellant Group has now submitted the audio recording of the December 13, 2005 hearing (Appellant's Exhibit 16-A), in connection with its argument regarding Condition 14(k) of the ZBA decision.

To understand the context of Condition 14(k), it is important to understand the sequence of events at the December 13, 2005 hearing. The ZBA first took evidence on the proposed septic system; however, that testimony focused on responding to concerns about the potential for contamination of the river by the proposed septic system in the event of flooding conditions. The project engineer presented evidence that the potential inundation

2

of the leach field would not cause contamination, in that contaminants would remain within the flooded soil of the leach field and not be flushed into the river. This concern led to discussion of whether the septic tank should be located above grade, and, if so, whether it should be required to be water-tight. The location of the septic system within the property was not then specifically discussed.

Following discussion of the septic system, in response to the ZBA's concerns about the potential for additional development on the property in the future, Appellee-Applicant's then-attorney Darrell Hotchkiss proposed limiting all construction to a two-acre building envelope, to be located in the northwest corner of the property, farthest from the river. Appellee-Applicant proposed that the remaining eight acres of the property would be subject to deeded covenants prohibiting further subdivision and development. In connection with this proposal, Attorney Hotchkiss submitted a sketch to the ZBA, drawn on a 1985 survey of the property, illustrating the location and approximate size of the proposed building envelope, together with a memorandum regarding "Protective Covenants Against Future Development." This sketch and memorandum have been provided to the Court in connection with the pending motions as Attachment C to the Blacklow affidavit submitted by Appellee-Applicant as its Exhibit 2; the sketch is also attached to the August 2008 Hotchkiss affidavit. (Appellee-Applicant's Exhibit 4)

The ZBA briefly discussed the proposed development's compatibility with the Town Plan. Then, in response to Attorney Hotchkiss' inquiry as to whether the ZBA needed any more information, and his request to close the hearing if no more information was required, the ZBA closed the evidentiary portion of the hearing.

The ZBA then discussed whether to vote immediately or to continue to deliberate on the conditional use approval at a later date. Attorney Hotchkiss encouraged the ZBA to vote that same evening. It was only in this context, after the closure of the evidence, that the only reference to a distance of seven hundred feet (from the river) was made, by

3

Attorney Hotchkiss. He said:

> I guess the only thing I would offer, is to just ask you to see whether or not this is a reasonable proposal for a reasonable use of a ten-point-one-acre parcel, with the development of a single-family residence, above the floodplain, probably — and I can only say probably — seven hundred feet back from the river, and with limitations with what's been offered in the [deeded covenants] memorandum, which again is only because this is the extent to which the Roses wish to develop this property . . . .

Attorney Hotchkiss' affidavit reflects that, when referring to a distance as being "probably" seven hundred feet back from the river, he indicated the northerly boundary of the property, which measures about nine hundred feet in depth from the road to the river.

Following this comment, no further mention was made by anyone at the meeting regarding a distance to the river. The ZBA decided to vote on the application that evening rather than postponing the vote to a later date. The ZBA approved the application in a motion that had as its "only condition" that "the Applicant works out with the Conservation Commission, in terms of how that particular covenant is placed in the deed and to whose benefit it runs," referring to the covenants protecting from development the remaining eight acres of the property, beyond the two-acre building envelope.

The ZBA issued its written notice of decision on February 28, 2006. The notice of decision recites the documents submitted to the ZBA in connection with the application, including "sets of plat plans prepared by Thomas C. Otterman," without reference to their dates, as well as the Hotchkiss memorandum, and a "set of site plans and site section . . . prepared by Jonathan Rose." In connection with the present motions, to explain the sequence of discussion of the septic system's location, the parties have also provided a "Plot Plan and Wastewater Disposal System Design" prepared for Appellee-Applicant by Common Sense Septic Design. The document's date of September 13, 2005 suggests that it

was a proposal presented at the first day of hearing; it shows a wastewater disposal system much closer to the river than the location within the two-acre building envelope shown on the 2007 Otterman plan and approved in the unappealed ANR Permit.

Paragraph 14 of the conditional use approval decision sets out thirteen conditions, labeled (a) through (m). Condition 14(k) states: "[t]he septic system shall be located as shown on the plat plan at least 700′ from the Connecticut River, shall be located to avoid impairment to them or contamination from them during flooding. Additional protection for sealing the top of the tank where the openings are located shall be applied."

Condition 14(i) states: "[a]ll new and replacement water supply systems shall be designed so as to minimize or prevent the infiltration of flood waters into the system." Condition 14(j) states: "[a]ll new and replacement septic systems shall be designed to minimize or prevent infiltration of flood waters into the systems and discharges from the systems into flood waters."

On March 17, 2006, Attorney Hotchkiss sent a letter to the Zoning Administrator requesting "correction/clarification" of portions of the written conditional use approval decision, including specifically the reference to the location of the septic system "at least 700′ from the Connecticut River" in Condition 14(k). However, in the end the February 2006 ZBA decision was neither corrected not appealed, and became final without the requested changes.

After receiving the February 2006 ZBA decision, the project engineer prepared a site plan for the project, showing the two-acre building envelope in the northwestern portion of the parcel, and depicting the septic system in the most northwesterly corner of that envelope, between the road and the proposed location of the house and garage. This plan is labeled as a "topographical survey" and will be referred to as "the 2007 Otterman Plan." The engineer's affidavit reflects that he prepared the topographical survey, which is

internally dated July 26,[2] 2007, and shows the building envelope and site plan information, from the sketch that was submitted by Attorney Hotchkiss, which was approved by the ZBA at the December 13, 2005 hearing and was referred to in the ZBA's February 2006 conditional use approval decision. Appellant's Exhibit 5-A; Appellee's Exhibit 2, Attachment D.

The 2007 Otterman Plan demonstrates that the proposed septic system is placed as far from the river as is possible on the property. By scale from that copy of the plan, the distance between the septic system and the river is approximately 900 feet when measured parallel to the northerly boundary of Applicant's property, but is only approximately 560 feet measured at the closest point, perpendicular to the river. No point on Applicant's property is more than seven hundred feet from the river if measured perpendicularly to the river at its closest point.

In August of 2007, Applicant received its Wastewater System and Potable Water Supply Permit for the project from the Agency of Natural Resources, which required the project to be completed as described on the Otterman site plan and topographic survey, both dated 7/26/07, and on a 2003 sheet of construction standards and details.

In September of 2007, Applicant received a zoning permit to construct the proposed residence and associated structures. The Zoning Administrator's approval of the permit states: "[a]pplication per decision (2-28-06) of permit application #3406; must comply with requirements of said decision and location shown on Otterman 7-26-07 topographic survey." The Zoning Administrator's affidavit of August 11, 2008 reflects that he interpreted the conditional use approval decision as requiring the septic system to be

---

2 The preparation date of this document is 2<u>5</u> July 2007, but it was stamped as received by the ANR's Wastewater Management Division on July 26, 2007, and everyone referring to the document appears to have used the July 2<u>6</u> date to refer to it.

located seven hundred feet from the river "when measured along the northern boundary" of the property, making the location shown on the 2007 Otterman Plan consistent with Condition 14(k) of the conditional use approval decision.

Appellants appealed the zoning permit to the ZBA; and appealed the ZBA's decision to this Court in the present appeal.

Question 2 of the Statement of Questions

Question 2 asks only "[w]hether the [zoning] permit is inconsistent with conditions (i) and (j) of the conditional use [approval] relating to the design of water supply systems and septic systems to minimize or prevent the infiltration of flood waters into the water system septic systems and discharges into the flood waters." Appellant Group suggests in its argument, however, that the design of the septic system was not sufficiently reviewed to determine whether it meets the requirements of Conditions 14(i) and (j).

Issues as to whether the design of the septic system will function so as to meet the requirements of the conditional use approval is not before the Court within Question 2 of the Statement of Questions; no enforcement case has been brought under 24 V.S.A. §§ 4451 and 4452 or under 24 V.S.A. § 4470(b). As both the conditional use approval decision and the state ANR Permit became final without appeal, any issue of whether those approvals comply with state standards or Federal Emergency Management Agency (FEMA) requirements, or whether the system as designed meets the ordinance requirements for conditional use approval, cannot be raised in the present appeal. Rather, Question 2 only raises the issue of whether the zoning permit that is the subject of this appeal is consistent with the requirements imposed by the conditional use approval decision.

The zoning permit that is the subject of the present appeal, by its very terms, is consistent with the requirements of Conditions 14(i) and 14(j) of the conditional use approval decision, as it specifically refers to the ZBA's February 28, 2006 decision and states

7

that the project "must comply with requirements of said decision and location shown on Otterman 7/26/07 topographic survey."

The language of the zoning permit does not impose any additional requirements that might conflict with Conditions 14(i) and (j), nor is it in any way impossible to comply both with the zoning permit and with Conditions 14(i) and (j). Since the requirements of both documents are identical as to Conditions 14(i) and (j), summary judgment as to Question 2 must be granted in favor of Appellee-Applicant.

Question 1

Because the conditional use approval decision became final without appeal, all that is before this Court in Question 1 of this appeal is the interpretation of the alleged internal inconsistencies in Condition 14(k).

As it does in construing zoning ordinances, the Court relies upon the normal rules of statutory construction when construing permit conditions. ANR v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573 (mem.). The primary concern is to implement the intent of the drafters. In re Williston Inn Group, 2008 VT 47, ¶ 14 (mem.). The court must give "effect to the whole and every part" of the permit, In re Stowe Club Highlands, 164 Vt. 272, 279–80 (1995), to "avoid rendering one part mere surplusage," In re Appeal of Jenness and Berrie, 2008 VT 117, ¶ 24, and so that the construction does not produce an absurd result. Wesco, Inc. v. Sorrell, 2004 VT 102, ¶14, 177 Vt. 287. Zoning permits, like zoning regulations, must be construed by resolving any ambiguity in favor of the landowner. Weston, 175 Vt. at 577; see also Appeal of Weeks, 167 Vt. 551, 555–56 (1998).

To determine whether the zoning permit is consistent with Condition 14(k) of the conditional use approval decision, the Court must first resolve whether the requirement in Condition 14(k) that the septic system be located "as shown on the plat plan" is a reference to the same location as that shown on the 2007 Otterman Plan, despite the fact that the 2007

Otterman Plan was prepared more than a year after the December 13, 2005 hearing and the February 2006 conditional use approval decision.

The undisputed facts and affidavits establish that the July 26, 2007 Otterman topographical survey and site plan was prepared by the engineer from, and shows the same building envelope as, the sketched site plan presented and voted on at the December 13, 2005 ZBA hearing and referred to in the ZBA's unappealed February 2006 conditional use approval decision.

The remaining issue is whether the phrase "at least 700´ from the Connecticut River" in any way modifies or alters the requirement that "[t]he septic system shall be located as shown on the plat plan." Several circumstances suggest that the reference to seven hundred feet was not intended by the drafters of the ZBA decision to additionally limit construction of the septic system to a location at least seven hundred feet from the river, measured perpendicularly. First and most importantly, no location on the property would meet that additional requirement. The intent of the drafters of the conditional use approval decision cannot have been to create the absurd result of precluding the landowner's use of the very location on the 2007 Otterman Plan that the ZBA itself had approved at the hearing and had required in the earlier clause of Condition 14(k).

In addition, a seven-hundred-foot perpendicular distance is not required by any provision of the zoning ordinance[3] or by any State law or regulation; in fact, the septic system location approved by the unappealed ANR permit would violate such a distance. The fact that such distance is not mandated by any law or regulation suggests that the drafters did not intend to impose the phrase "at least 700 feet from the Connecticut River" as an additional condition, but rather to ensure that the septic system would be placed

---

3 The fact that setbacks are ordinarily measured along a line perpendicular to the relevant boundary does not define a measurement method for the septic system location.

within the agreed building envelope pointed out by Attorney Hotchkiss at the December 2005 ZBA hearing (as distinct from the location originally proposed in September 2005 for the septic system).

Further, the audio recording of the December 13, 2005 ZBA hearing indicates that the sole reference to a seven-hundred-foot distance from the river was made, not by a technical witness, but by Attorney Hotchkiss, after the evidentiary portion of the hearing had closed, and in the context of an argument in favor of concluding the voting that evening. Late in the hearing, after the ZBA had stated that it did not require any additional information, it turned to the decision of whether to vote immediately or to continue deliberations at a later date. Attorney Hotchkiss referred to "development of a single family residence above the floodplain, probably — and I can only say probably — seven hundred feet back from the River," without any mention of the septic system. He referred to his sketch, indicating the distance to the proposed building envelope along the northerly boundary of the parcel.

In context, the focus of his argument was his view of the evident reasonableness of the proposed development, to encourage the ZBA to vote that evening rather than to delay its decision. He did not propose the 'probable' seven-hundred-foot distance as an additional limitation on development, nor did he link the distance in any way to the location of the septic system or the house. Even if he had done so, an oral representation at a hearing is not binding on an applicant unless it is translated into an unambiguous condition of a written ZBA decision. See, e.g., In re Kostenblatt, 161 Vt. 292, 298–99 (1994). In the present case the reference to the seven-hundred-foot distance in the ZBA's written conditional use approval decision is unquestionably ambiguous, for the reasons discussed above.

Because the distance 700-foot reference in Condition 14(k) is ambiguous, and conflicts with the specific locational requirement of the unambiguous referenced plan, it

10

does not constitute a separate enforceable condition of the conditional use approval.  Such conditions must be specific and "must be expressed with sufficient clarity to give notice of the limitations on the use of the land."  In re Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978); see Clayton v. Clayton Investments, Inc., 2007 VT 38A, ¶ 13 (mem.) (quoting In re Farrell).  The requirement for the septic system to be located as shown on specific plans is expressed with the requisite clarity, and is reinforced by the fact that the later unappealed ANR Permit for the septic system approved the identical location as shown on the identical plans.  This is not a case in which a distance limitation or measurement method is found in the relevant zoning ordinance, or is found in an applicant's application materials.  Even if the seven-hundred-foot reference did not conflict with the specific location on the plans, neither the zoning ordinance nor the application assists in determining how that reference was intended to be measured.  The seven-hundred-foot reference by itself does not provide "sufficient clarity to give notice of the limitations on the use of the land," and therefore cannot be enforced as a permit condition.  See In re Farrell, 135 Vt. at 617.

In context, the requirement of the ZBA decision that the septic system be installed in the "location shown on the plat plan" is the enforceable condition of the conditional use approval.  By contrast, the reference to "at least 700 feet from" the river is a subordinate clause simply assisting the reader in further defining or locating the building envelope, as indicated  along the northerly boundary of the property by Appellee-Applicant's attorney during the hearing.  While it would have been helpful if the ZBA conditional use approval decision had been corrected or appealed to eliminate the apparent conflict, a close reading of the condition, in the context of the December 13, 2005 hearing, resolves the apparent conflict in favor of the landowner at the location shown on the plat plan, that is, the location shown on the 2007 Otterman Plan.  The zoning permit, requiring compliance with "location shown on Otterman 7-26-07 topographic survey," is therefore consistent with Condition 14(k) of the conditional use approval decision.

11

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicant's Motion for Summary Judgment on Questions 1 and 2 of the Statement of Questions is GRANTED, and Appellant Group's Motion is DENIED, concluding this appeal.

Done at Berlin, Vermont, this 30th day of September, 2008.

_____
Merideth Wright
Environmental Judge